Florence C. McGowen v. Alexander McGowen.

1. DIVORCE—ABANDONMENT—EVIDENCE.—Suit was brought by the husband for divorce on the ground of abandonment. The wife alleged that the abandonment was not voluntary, but was by the procurement and consent of the husband. A witness at the trial testified that a few days before the separation the wife came to him weeping and in great distress, and informed him of trouble between her husband and herself, but he was not permitted by the court to testify as to what she then said in regard to her being permitted by her husband to stay at his house, or her leaving under compulsion ; nor was she permitted to state.what she said in that regard immediately after separation, on reaching her mother's home : Held—

   1. That her declarations should have been admitted. They were so much a part of the final act of separation and·explanatory of its cause as to have been proper for the jury to consider.

   2. Similar declarations made at so late a period after separation as not to constitute a part of the res gestæ, would not be admissible.

2. RES GESTÆ—DECLARATIONS.—The doctrine of res gestæ is based on the presumption, that declarations made at the same time with the principal act—evoked by it without premeditation, and giving it color and character as explanatory of the mind and purpose of the actor— are as reliable as the act itself, of which it is a part,.and can be proved along with it, without the oath of the party..

3. RES GESTÆ.—The res gestæ differs according to the circumstances of the particular case. It may be embraced within the brief compass of time which comprises the duration: of, the principal·act itself, or it

42

may extend over a much longer period of time, if the transaction be one of a continuing character.

4. SAME—DECLARATIONS.—Declarations, to be a part of the *res gestæ,* are not required to be precisely concurrent in point of time with the principal act. If they spring out of the principal transaction—if they tend to explain it—are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of deliberate design—then they may be regarded as contemporaneous and are admissible. Thus tested, they may either precede or follow the act.

5. ABANDONMENT—DIVORCE.—To constitute the voluntary abandonment which is cause for divorce, there must be both the physical act of separation and the mental intention to abandon.

6. ABANDONMENT—DECLARATIONS.—The declarations, after separation, by husband or wife, made in good faith by the one who left the other, and a considerable time after the act of separation, expressing a desire to return and live with the other spouse, would not be admissible as part of the *res gestæ;* though they would be sufficient, if communicated, to change the character of the separation from one with intention of abandonment, if wrongful in the first instance.

7. DIVORCE—CHARGE OF COURT—ABANDONMENT.—To constitute the voluntary separation, with intention of abandonment, which would authorize a divorce under the statute, it must be shown that the plaintiff neither caused, procured, nor consented to the separation.

8. CHARGE OF COURT—DIVORCE.—See charge asked of the court and erroneously refused.

APPEAL from Harris. Tried below before the Hon. James Masterson.

All the facts of this case material in view of the opinion, will be found stated carefully in the opinion.

*Hutcheson & Carrington,* for appellant.

I. The evidence sought was clearly *res gestæ.* (1 Greenl. Ev., secs. 108, 111, and notes; 1 Phil. Ev., 5th ed., p. 151, marg. p. 187, and notes 3, 4, 80; 2 Bouv. Law Dic., p. 467; Lund *v.* Inh. of Tyngsborough, 9. Cush., 42, 43; Walton *v.* Green, 1 Carr & P., 621.)

II. The separation in this case was not an isolated circumstance, but was essentially one of many and continuing acts, and the visits to Messrs. Crosby and Hill were a part of the separation. It was then discussed by both parties, and the

agreement to pay her $40 a mouth was then assented to, and all said to them on the subject was a part of the *res gestæ.* (1 Greenl. Ev., sec. 108; Lund *v.* Inh. of Tyngsborough, 9 Cush., 48; Mitcham *v.* The State, 11 Ga., 615; Handy *v.* Johnson, 5 Md., 450.)

III. The third and fifth questions to Hill were perfectly good. Whether his statement and conduct were a part of the *res gestæ* or not, still they were legitimate testimony as admissions against him. (1 Greenl. Ev., secs. 169–175.)

IV. The charge of the court is composed of confusing, if not incomplete sentences, and the special instruction asked was necessary to instruct the jury as to the effect of any consent of plaintiff to the separation.

The charge given was calculated to lead them to understand that, under certain circumstances of offensiveness, a consent by plaintiff was no bar to recovery. (Bast *v.* Alford, 20 Tex., 229.)

V. The charge of the court was calculated to make the jury believe that they must find for plaintiff or defendant an affirmative verdict on their pleadings, weighing which was true and deciding between them. The form of the verdict dictated for the defendant was clearly erroneous, and misled the jury. (Love *v.* Wyatt, 19 Tex., 312.) [The charge objected to will be found in the opinion.]

VI. The court had nowhere instructed the jury as to the effect of plaintiff's consent to the separation, or his contributing to its continuation by supporting her during her absence, and there was evidence sufficient to have submitted this to their consideration, notwithstanding the amount excluded. (Smithwick *v.* Andrews, 24 Tex., 494; Chamblee *v.* Tarbox, 27 Tex., 146.)

*Jones & Garnett,* for appellee.

I. The acts and declarations of the defendant, not made in the presence and hearing of plaintiff, are not admissible as evidence against him.

II. Neither party to a suit will be permitted to manufacture evidence in his own behalf, by the introduction in evidence of his own acts and declarations, made in his own favor and against the opposite party.

III. It is the duty of a witness to state facts, and not deduce conclusions or inferences from facts. The answers to the third, fourth, and fifth questions to Crosby, and to the first, third, and fifth questions to Hill, were properly excluded, because they sought the opinion or conclusions of the witness, and not facts. (1 Greenl. Ev., sec. 434, p. 507.)

IV. The charge of the court is full and explicit on all material questions made by the pleadings and evidence. It informed the jury that the law did not contemplate a separation by agreement and consent of parties with a view of obtaining a divorce; that abandonment of plaintiff by defendant for three years, would not entitle plaintiff to a divorce unless such abandonment was under the circumstances of offensiveness, as alleged in plaintiff's pleadings, and that the law does not allow or permit parties to voluntarily separate with a view of bringing suit for divorce. The charge embraced all the law applicable to the case, and the special instruction was properly refused. (Robinson *v.* Varnell, 16 Tex., 386; Norvell *v.* Oury, 13 Tex., 32; Davis *v.* Loftin, 6 Tex., 47; Able *v.* Lee, 6 Tex., 427.)

V. The charge of the court set out by appellant under the third assignment of error was proper and legal, was altogether in appellant's favor, and was not calculated to make the jury find their verdict upon the pleadings of either party, except in so far as they were supported by the evidence.

A verdict such as the one dictated by the court would have been, in substance and in effect, a verdict for defendant. (Hollingsworth *v.* Holshousen, 17 Tex., 47; Case *v.* Jennings, 17 Tex., 674; Hubby *v.* Stokes, 22 Tex., 220; Mills *v.* Ashe, 16 Tex., 304; Hassell *v.* Nutt, 14 Tex., 266.)

BONNER, ASSOCIATE JUSTICE.—This suit was instituted by appellee, Alexander McGowen, against appellant, Florence C.

McGowen, on March 15, 1879, asking a divorce on the ground of abandonment for three years.

The defendant pleaded that the separation between her and plaintiff was through plaintiff's procurement and by his consent, and under an agreement that plaintiff would pay defendant $40 a month during the separation, and that she had always been willing to return to her husband.

Verdict and judgment awarding divorce to plaintiff; motion for new trial overruled, and defendant has perfected an appeal to this court.

The first error assigned is, that "the court erred in sustaining the exception of the plaintiff to the questions of defendant propounded to the witnesses J. F. Crosby and E. P. Hill, and in excluding the said questions and not permitting them to be answered."

On the trial, witness J. F. Crosby testified that, "a few days before the separation, defendant came to him and seemed to be in great distress; was crying, and informed him of trouble between her and her husband"; and at this point the witness was asked the following questions, which were excluded by the court:

"1. On her coming to you about the disagreement in the family, what did she say Judge McGowen told her about leaving or being permitted to stay at his house?

"2. In her manner and in what she said, did she manifest a disposition to quit plaintiff of her own accord, or to remain with him if desired by him?

"3. Did she tell you that she was on the eve of a separation from her husband, to which she was opposed and on which he insisted?

"4. Did her manner indicate that she was distressed and opposed to the separation, or not?

"5. Did her manner indicate that she was acting under compulsion and in distress consequent thereto, or that she was voluntarily disposed to do what she said, and what seemed to be imminent?

" 6. Did you tell her that she should return to her husband, and did she seem to be happy to do so, or the contrary?"

Witness E. P. Hill testified: "On the evening before the separation, as he understood it to have taken place, defendant came to his office and stated the trouble in the family; said she would bring her husband; that a short while afterwards plaintiff came to his office, when he said, alluding to the trouble between himself and wife, that there was a necessity that they should separate; called his wife Florence; said he did not have any complaint against her, but it was necessary they should separate, and he would pay her $40 a month; did not say whether the separation was at his instance or not, but recognized the necessity."

Here the following questions were asked this witness and excluded:

" 1. When defendant came to you and talked about the separation, did she seem to be in great distress at the separation?

" 2. Did she express a want of consent to the separation, or otherwise?

" 3. Did Judge McGowen, in his interview with you about the separation, when brought to your office by his wife, treat the separation as one which he was producing or procuring, or one that he was opposing?

" 5. While you do not recollect the language used by him, was the effect of what he said such as to satisfy you that the separation was with or against his consent?"

The eighth error assigned is, that "the court erred in excluding the third, fourth, and fifth questions asked Mrs. M. H. Abbey, as shown in bill of exceptions."

Frank McGowen testified that when appellant decided to go, she asked him to carry her to her mother, Mrs. M. H. Abbey, and he did carry her directly from the house of appellee to her mother's house, and left her there.

Mrs. Abbey testified for defendant, and the following questions were asked and excluded:

" 3. When your daughter came home on the evening of the

separation, what did she say about her coming home; for what purpose did she say she had come; who did she say sent her, or did she say she came of her own accord?

"4. Did she, during her separation, state that its inception and continuation had a cause; and if so, what did she state was the cause; and what did she state about the consent of herself or the compulsion of her husband in the matter, if anything?

"5. When your daughter came home, was she in great affliction, and did she state what produced her affliction and what occasioned her coming home?"

The above two alleged errors will be considered together. It is contended by appellant that the testimony sought to be elicited by these questions was part of the *res gestæ*, and should have been admitted.

There was no objection to the form of the questions, or that by some of them the conclusion of the witness was sought, but in the bill of exception the court states that "the objection to the evidence offered and excluded was, that it was not competent for a party to introduce his declarations in his own favor, thus to manufacture evidence."

The distinction between declarations which are objectionable as hearsay and those which are admissible as original testimony, because part of the *res gestæ*, is often attended with much doubt and difficulty, as was most forcibly illustrated in the singular instance of disagreement among eminent judges in the case of Wright *v.* Tatham, 5 Clark & Fin., 670, cited in Lund *v.* Inh. of Tyngsborough, 9 Cush., 44.

The doctrine is more generally applied to that class of cases, like the one now before the court, in which it is sought to show the state of mind or the motives under which any particular act is done.

Mr. Greenleaf says, that "where a person does any act material to be understood, his declarations made at the time of the transaction and expressive of its character, motive, or object, are regarded as verbal acts, indicating a present purpose

and intention, and are therefore admitted in proof like any other material facts." (1 Greenl. on Ev., sec. 108.)

The doctrine of *res gestœ* is based upon the presumption that declarations made at the same time with the principal act, evoked by it without premeditation, and giving it color and character as explanatory of the mind and purpose of the actor, are as reliable as the act itself, of which it is a part, and can be proved along with it without the oath of the party. (Mitchum *v.* The State, 11 Ga., 624.)

" If a declaration has its force, by itself, as an abstract statement, detached from any particular fact in question, depending for its ˏeffect on the credit of the person making it, it is not admissible in evidence. Such a declaration would be hearsay. * * * But when the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence. ·The credit which the act or fact gives to the accompanying declaration as a part of the transaction, and the tendency of the contemporary declarations as a part of the transaction, to explain the particular fact, distinguish this class of declarations from mere hearsay." (Lund *v.* Inh. of Tyngsborough, 9 Cush., 41.)

The *res gestœ* differs according to the circumstances of the particular case. It may be embraced within the brief compass of time which comprises the duration of the principal act or transaction itself, or it may extend over a much longer period of time, if the transaction be one of a continuing character.

As said by the Supreme Court of California, in People *v.* Vernon: "Declarations, to be a part of the *res gestœ*, are not required to be precisely concurrent in point of time with the principal fact. If they spring out of the principal transaction— if they tend to explain it—are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of de-

liberate design—then they may be regarded as contemporaneous, and are admissible." (35 Cal., 51.)

Thus tested, the declarations, which form part of the *res gestæ*, may either precede or follow the act. (Mitchum *v.* The State, 11 Ga., 626; Harriman *v.* Stowe, 57 Mo., 93; Insurance Company *v.* Mosley, 8 Wall., 397; Boothe *v.* The State, 4 Tex. Ct. of App., 208.)

To constitute a voluntary abandonment of her husband by Mrs. McGowen, in contemplation of our statute, there must have been both the physical act of separation and the mental act or motive which constituted the intention of abandonment. From the very nature of the case, it could not reasonably be presumed that the motive would have had its inception at the very time of the act. There must have been, as a general rule, at least in such cases, a preceding cause, voluntarily conceived and nursed or provoked, for a sufficiently continuing time, to have finally culminated in the act of separation.

Under the circumstances as developed by the testimony, the declarations of Mrs. McGowen made but a short time before the separation, and in regard to it, and when, as described by one of the witnesses, "she seemed to be in great distress and crying," made, it may reasonably be inferred, to the witness as a friend and adviser, we are of opinion, were so much a part of the final act of separation, and explanatory of its cause, as to have been proper for the consideration of the jury, in connection with all the other facts and circumstances of the case.

For the same reason, her declarations immediately on reaching the home of her mother after the separation, and explanatory of it, should also have been admitted; but not her statements to this effect made afterwards. (1 Greenl. Ev., sec. 108; Lund *v.* Inh. of Tyngsborough, 9 Cush., 39, citing numerous authorities on p. 45; Mitchum *v.* The State, 11 Ga., 621; Handy *v.* Johnson, 5 Md., 450; Boothe *v.* The State, 4 Tex. Ct. of App., 208, citing numerous authorities on p. 211.)

Declarations, if any, made in good faith by her some time

afterwards, but within the three years, expressive of a desire to return and live with the husband, although they might be sufficient, if communicated to him, to change the character of her separation from ·one with intention of abandonment, if wrongful in the first instance, yet would not be admissible as part of the *res gestœ.*

The second error assigned was, in effect, that the court erred in the general charge to the jury, and in refusing to give the special charge asked by appellant.

The charge of the court was: "To constitute abandonment, it is for the plaintiff to show not only a separation, but he must show to your satisfaction that the separation began under the circumstances as alleged in his pleadings. The law does not contemplate a separation by consent and agreement of the parties, with a view that by a prolongation of such absence for a period long enough to complete a statutory right; for unless the abandonment was under the circumstances of offensiveness as alleged in the plaintiff's pleadings, the law does not allow or permit parties to voluntarily separate, with a view of bringing suit for divorce. On the other hand, if the proof satisfy you that plaintiff has substantially established the allegations of plaintiff's pleadings, then find for plaintiff, and find for your verdict," &c.

Charge asked and refused: "That if the evidence shows that the separation of the plaintiff and defendant was agreed upon between them, and was the result either of the expressed wishes on his part that she should go home, or of his consent to a separation between them, then the defendant did not abandon the plaintiff with the offensive intention of abandonment contemplated by the law."

Under this assignment the appellant makes the following proposition:

"The charge of the court is composed of confusing, if not incomplete sentences, and the special instruction asked was necessary to instruct the jury as to the effect of any consent of plaintiff to the separation.

"The charge given was calculated to lead them to understand that under certain circumstances of offensiveness a consent by plaintiff was no bar to recovery."

For certain causes, provided by the statute, divorces may be lawfully obtained; yet so guarded was the Legislature in the delegation of this power to the courts, to prevent its abuse, that such decrees were authorized only "upon full and satisfactory evidence." (Paschal's Dig., art. 3452; Rev. Stats., art. 2863.)

Under our statute the jury are not permitted to return a general verdict for the plaintiff as in ordinary cases, but simply, if proven, that the allegations of the petition are true, reserving to the court the power to withhold the divorce if a proper and satisfactory case has not been made by the plaintiff.

Although the jury are required in their verdict simply to respond as to the truth of the material allegations in the petition, yet it often happens in practice that the court, in the application of the law to evidence of the particular case, is required in the charge to explain and construe these allegations, so as to present the case in its proper legal aspect for their consideration.

To do this, the court below in the charge sought to explain the circumstances under which a separation would or not, in contemplation of law, be such an abandonment as would authorize a divorce.

The charge of the learned judge, however, was not, in our opinion, so sufficiently clear and explicit but that an ordinary jury might have inferred that the plaintiff, although consenting to the separation, was nevertheless entitled to the divorce.

To constitute such voluntary separation with intention of abandonment, which would authorize a divorce under the statute, the plaintiff should have neither caused, procured, nor consented to the separation. It should not have been a separation by mutual consent, but should have been a separation with intent of abandonment, under circumstances which would have amounted to a voluntary desertion upon the part of the defendant, without the fault, procurement, or consent of plain-

tiff, and should have been continued for the length of time required by the statute. (Besch v. Besch, 27 Tex., 392; Hare v. Hare, 10 Tex., 355; Bishop on Mar. and Div., title DESERTION.)

The charge asked by defendant was intended to embrace this view of the statute, and the court erred in refusing to give it.

For this and the other error in refusing to admit the evidence sought to be introduced by certain of the questions asked, in accordance with the doctrine of *res gestæ* as above explained, the judgment must be reversed and the cause remanded.

In view of this, we do not express any opinion upon the legal effect of the testimony introduced, as sought in one of the errors assigned, as we do not wish to embarrass the case upon another trial.   *Judgment reversed and cause remanded.*

REVERSED AND REMANDED.

[Opinion delivered March 5, 1880.]

[Chief Justice MOORE was not present when this case was under consultation, nor when the opinion was rendered, and therefore took no part in its decision.]