JURADO v. HOLMES. (No. 772.)

(Court of Civil Appeals of Texas. El Paso. Jan. 10, 1918. On Rehearing, Feb. 14, 1918.)

1. SALES ⊙⇒215—SALE OF CATTLE ON RANGE.

Vernon's Sayles' Ann. Civ. St. 1914, art. 7170, requiring a bill of sale always to be taken on sale of cattle on the range, and article 7171, making possession prima facie illegal without a bill of sale, have no extraterritorial effect, where the sale without the state was accompanied by actual delivery, and the property was afterwards brought into the state.

2. EVIDENCE ⊙⇒317(4)—HEARSAY—ADMISSIBILITY.

Where plaintiff bought cattle in Mexico, and they were claimed by defendant as administrator of his grandfather, a witness should not have been allowed to testify that he accompa-

nied plaintiff's vendor when he paid money to the persons on whose behalf defendant claimed the cattle, and that plaintiff's vendor then stated that he was buying certain interests of the estate; such testimony being hearsay.

3. APPEAL AND ERROR ☞882(9)—WAIVER OF ERROR.

That a party, objecting to testimony as hearsay, brings out testimony to the same effect on cross-examining the witness, does not waive the error.

On Rehearing.

4. EVIDENCE ☞118—RES GESTÆ—HEARSAY.

The rule against hearsay testimony does not include res gestæ of the transaction, such as declarations evoked by the transaction itself, without premeditation, voluntary, and spontaneous.

5. EVIDENCE ☞121(9)—RES GESTÆ.

Where plaintiff bought cattle in Mexico, and defendant claimed them as administrator of an estate, testimony of one who accompanied plaintiff's vendor, when he paid the money to the persons on whose behalf defendant claimed the cattle, that the vendor said at the time that he was buying certain interests from the estate, is not admissible as res gestæ.

Appeal from District Court, El Paso County; S. J. Isaacks, Judge.

Suit by George M. Holmes against Pedro Rodriguez Jurado. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial. On rehearing, motion overruled.

Turney, Culwell, Holliday & Pollard and Harrington & Bridgers, all of El Paso, for appellant. F. G. Morris and T. A. Falvey, both of El Paso, for appellee.

HARPER, C. J. The record shows that Holmes, appellee, shipped certain cattle from the republic of Mexico through the custom house at El Paso, and that thereafter in some way he lost his possession of them. Through a claim of ownership of a part thereof for himself and as administrator of an estate for others, appellant obtained possession (in some way not revealed). Appellee, by writ of sequestration, levied upon them, and defendant (appellant here) filed replevy bond. This suit is for the cattle, or, in the alternative, for their value. The cause was submitted upon special issues to a jury, and upon the verdict judgment was rendered for appellee, Holmes, for $2,590, from which this appeal is prosecuted.

[1] The first assignment is that the trial court should have instructed a verdict for appellant, because the evidence is conclusive that the cattle are claimed by appellee by purchase upon the range, and his title is not evidenced by bill of sale; therefore the possession of the cattle is prima facie illegal. The cattle were upon the range in the republic of Mexico, and from there shipped to the United States through the custom house. Under the holding in Bank v. Daugherty, 81 Tex. 301, 16 S. W. 1028, the provisions of articles 7170 and 7171, Vernon's Sayles' Statutes of Texas, to the effect above claimed, will not be given an extraterritorial effect, where the sale was accompanied by actual delivery and afterwards brought into the state, because the statute has reference to cattle found within this state.

[2] The second assignment charges error in admitting over objection the following testimony:

Witness Payan: "I went to Parral at that time for my family, and Don Ygnacio and I went to the attorney's house, Mr. Salas. Mr. Loya told me to act as companion, so he could deliver some money, so I would be present when he would deliver the money, and that is where I knew those people he introduced as his relations. I did not see the defendant, Pedro R. Jurado, present at the time; he was not there. Mr. Loya stated to me he was delivering that money for interests he was buying from the inheritance left by Pedro Maria Jurado; that is all, and I left them. I saw the money delivered to this man Rodriguez. They were referring to some interests, cattle and other things. They did not tell me what ranch or cattle, or anything; just told me it was property left by the will of Pedro Maria Jurado; during that time that man was very well known in that district. I have been informed that the people I was talking to were the father and mother of the defendant here."

To which testimony, the defendant objected for the following reasons, to wit: That the same was immaterial and irrelevant, and in no way binding upon the defendant, and further that said testimony was not admissible as rebuttal testimony, and that it was hearsay, and that it was secondary; that, if there was any sale of these cattle then, a bill of sale would be the best evidence as to the transfer and sale, and that said testimony was merely hearsay, and was incompetent; and, further, that the witness does not know whether the parties referred to are the same parties at interest in this case. The testimony, if of any probative effect, tends only to establish that Loya, appellee's vendor, had purchased the cattle from the same parties for whom the appellant claims the cattle as administrator under the will of their grandfather. It seems clear that the testimony should not have been admitted, for the reason that it was hearsay testimony. The appellee urges that it was res gestæ of the transaction. It is clear that the witness did not know what the money was paid for, and there is no other testimony in the record to identify the object of the payment.

[3] Appellee further urges that, since appellant brought out the same testimony upon cross-examination, he waived the error. The rule is settled to the contrary in Cathey v. Railway Co., 104 Tex. 39, 133 S. W. 417, 33 L. R. A. (N. S.) 103. The test question in this case is: Did appellee get title by his purchase from Ygnacio Loya? And the record discloses that, if the latter had title, it was from the heirs of Pedro Maria Jurado, and there is no other evidence, than that above complained of, to show that he acquired such title, and this is not admissible,

unless it be clearly shown that the money paid was the purchase price of the cattle in controversy. We note also, in view of another trial, that defendant testified that certain of the cattle were his by inheritance as one of the heirs, and that this is in no wise contradicted. For this reason appellant in any event should have had judgment for such cattle.

The third is that it was error to refuse special charge requested by appellant. Was there a market value in El Paso for the class and kind of cattle of those in controversy? And the fourth is based upon an objection to the main charge, upon the ground that it assumed that there was a market value for the cattle in El Paso. Under the evidence, the question is so doubtful as to require the court to submit it affirmatively to the jury, and it was error to submit the question, "What is the market value * * *?" without first submitting the question of whether in fact there was a market value.

The fifth complains of the misconduct of the jury in arriving at the market value of the cattle. If error, not likely to occur upon another trial.

For the reasons noted above, the cause is reversed and remanded for a new trial.

## On Rehearing.

[4] Appellee, upon motion for rehearing, very earnestly urges that the testimony of witness Payan, complained of in the second assignment, while hearsay, was nevertheless within the exception to the rule that hearsay evidence is not admissible, because it was res gestæ of the transaction, and therefore admissible, and further urges that in determining the question the court should look to other testimony of the same witness which was explanatory of that objected to, and requests that we discuss this suggestion more fully, in order that it may be determined just what evidence is excluded by our holding. In the original opinion we considered only one objection to this testimony, namely, that it was hearsay. We did not pass upon the objections made in the court below, as shown by the bill of exceptions, but which were not urged in this court. The rule which rejects hearsay evidence applies to that kind of evidence which does not derive its value solely from the credit to be attached to the witness himself, but rests also in part on the veracity and competency of some other person, not a party to the action, nor in the presence and hearing of a party thereto, from which the witness received his information. To this rule what is termed res gestæ of the transaction, such as declarations evoked by the transaction itself, and without premeditation, that they sprang out of it, were voluntary and spontaneous, and made at a time so near as to preclude the idea of deliberate design, is admitted as an exception thereto. Malone v. T. P. Ry. Co., 49 Tex. Civ. App. 398, 109 S. W. 430; McGowen v. McGowen, 52 Tex. 657.

Now, bearing in mind the well-settled rule of hearsay evidence and the principle upon which the exception is predicated, let us apply them to the evidence which we hold was not admissible. As stated in the opinion, if this evidence has any probative value, it is because it tends to prove that Loya acquired the title to the cattle in controversy from the people whom the appellant claims to represent as administrator. Loya was not under oath when the purported statements were made, so Payan's testimony concerning his statements derives its value in part from the credit to be attached to the veracity and competency of Loya; for this is not testimony concerning the sale, except in so far as Loya's statements to him are evidence of the transaction or sale. In other words, to admit this testimony is to permit appellee to prove the transaction itself (sale by the heirs to Loya) by the unsworn statements of the party (Loya) from whom he claims to have purchased the cattle, supported by the fact that he saw money paid. Payan's words are:

"Mr. Loya told me to act as companion, so he could deliver some money, so I would be present when he would deliver the money. * * * Mr. Loya stated to me he was delivering that money for interests he was buying from the inheritance left by Pedro Maria Jurado; that is all, and I left them. I saw the money delivered to this man Rodriguez. They were referring to some interests, cattle and other things. They did not tell me what ranch or cattle, or anything; just told me it was property left by the will of Pedro Maria Jurado; during that time that man was very well known in that district. I have been informed that the people I was talking to were the father and mother of the defendant here.

"Cross-Examination: * * * Loya told me that he had to pay some money to these people for something. I did not see what he got for his money. I was not present when he received anything. I saw him pay the money to these people. I do not know how much he paid them. It was bank notes of Mexico. He paid that money to Rodriguez and his wife, in the office of the attorney, Gonzales. The money was handed to Rodriguez. The lawyer had some documents that were signed by several witnesses. I do not know what they did with the documents. There were several people present at the time. Don Ygnacio Loya was there. He told me he wanted me to go with him, so I would be present when the money was turned over. He did not talk about the lawyer, but I suppose the lawyer in that case had to make out the documents. He was present when the money changed hands. Loya told me that the money was concerning some interests left by the will of Pedro Maria Jurado. I did not see the will; I don't know anything about that. This lawyer's home was in Parral. I did not see the cattle, or any of the property that was turned over. I understood from the transaction I heard and saw that all of the property these people received from the father of Rodriguez was sold to Loya."

[5] We distinctly recognize the rule contended for by appellee, admitting as a part

of the res gestæ voluntary and spontaneous declarations, evoked by the transaction itself and made at the proper time. The testimony quoted is insufficient to bring within the rule the declarations made by Loya to Payan. It does not sufficiently appear that they were made at the time the alleged sale transpired and as a part of the transaction. The statements, for aught the testimony shows, may have been made at some other time. We adhere to our ruling that the testimony was inadmissible.

The pertinency of Terrell v. McCown, 91 Tex. 231 43 S. W. 2, cited by appellee is not apparen°. Sparks v. De Bord, 110 S. W. 757, is simply an application of the res gestæ rule.

The motion for rehearing is overruled.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.