## REED v. REED.
### No. 12301.

Court of Civil Appeals of Texas. Fort Worth.
March 29, 1930.

Donley Suddath, of Henrietta, for appellant.

BUCK, J.

Alvin Reed sued Mrs. Billy Reed for divorce. He alleged that on January 15, 1925, plaintiff and defendant were married at Montague, Tex., and lived together as husband and wife in Clay county for about six months, and during the month of July, 1925, a separation took place; that he was kind to the defendant, and furnished her with the necessities and luxuries of life in keeping with their station, but that the defendant was neglectful of the household of plaintiff, and did not conserve his interest and properly care for him, and without just ground, within a short time after said marriage, began a course of harsh and cruel conduct towards plaintiff, culminating in their separation; that the defendant began a course of undue familiarity with other men, and abused defendant when he remonstrated with her, which condition continued to grow worse, and during the month of July, 1925, the situation became unbearable, and the defendant left the plaintiff, and has not communicated with him since; that the actions and conduct of defendant were of such a nature as to render further their living together as husband and wife insupportable; that defendant had voluntarily left his bed and board for three years with the intention of abandonment.

The defendant waived service of citation and entered her appearance and agreed that the cause might be set down for hearing at any time and a trial had thereon, whether she was present or not.

The court tried the cause without the intervention of a jury and denied plaintiff a divorce, from which judgment plaintiff has appealed.

The evidence is short, and consisted of the testimony of Mrs. E. T. Reed, mother of plaintiff, Alvin Reed, the plaintiff, and Dr. H. L. Reed, a local physician, who appeared not to be any relation of the plaintiff and defendant. Mrs. E. T. Reed testified that plaintiff and defendant were married in January, 1925, and lived at her house as husband and wife until about August, 1926, as she remembered it, when they separated; that defendant often quarreled with plaintiff, but plaintiff would not quarrel with defendant; that plaintiff tried to be pleasant with defendant and live with her, but she was not satisfied; that witness and her husband tried to help them live together amicably, but one night at supper time defendant left, saying she was not going to live with plaintiff again; that plaintiff tried to talk with her, but she left; that she came back a short time thereafter and got her clothes; that one of the Sims girls was with her; that she lived with the family of George Sims for some time, and then left Henrietta for Kansas; that she had not written to plaintiff, and has not said that she wanted to live with him again, so far as witness knew.

On cross-examination by the court she testified that she was not certain of the exact date that defendant left her husband, but thought it was in August of the year they were married; that defendant was disagreeable and hard to get along with, and she did not think they would ever live together again.

Dr. Reed testified that he was a practicing physician residing in Henrietta; that he was personally acquainted with Alvin Reed and Billy Reed, his wife, and he remembered when they were married, but not the exact date; that he remembered that defendant left plaintiff; that he visited her at the home of George Sims for medical attention after she separated from plaintiff; that on one occasion she told him that she had quit Alvin and would not ever live with him again; that he asked her why she and Alvin could not make up and live together again; that she shortly left Henrietta for the state of

Kansas; that he had not seen her since, but had heard that she and Buck Sims, the son of George Sims, had come back to Henrietta together.

The plaintiff testified that he was married to Billy Sweek, the defendant in the case, by the justice of the peace at Montague, Tex., on January 15, 1925; that he and his wife lived with his father and mother; that she left him in July, 1925, and for a while lived with George Sims' family, and then went to Kansas; that he understood that she went with Buck Sims; that, when she left, she said she would not live with him any more, and that he had not seen or heard from her since; that he heard that she and Buck Sims returned from Kansas for a visit with the Sims family; that he did not know whether she had been living with Buck Sims or not; that during their married life she abused and mistreated him and that it kept getting worse all the time, and when he went to the National Guard Encampment in 1925, and came back, he heard that she had been going with other boys; that he asked her about it, and she denied it and abused him; that he and another person caught her riding with "Slickum" Paine, and that when he asked her about it she denied it and abused him, calling him a "damn lying son of a bitch" and struck him; that he did not strike her or abuse her; that when she began to fuss he always went to town; that he did not give her any cause for treating him the way she did; that he tried to feed and clothe her in keeping with their station; that he could not live with her again.

The court began to cross-examine plaintiff, and informed him that he need not answer any questions which would tend to incriminate him. Whereupon the court asked the witness if he had been in jail charged with having trouble with a girl, and if it was true that he, or his father for him, had paid the girl or her father anything as a settlement because of his conduct with the girl. The witness declined to answer. Then the court asked the witness if he had not had unlawful sexual intercourse with another girl since his marriage to defendant, which question plaintiff refused to answer. But on re-direct examination the witness testified that the case against him was dismissed; that he had never had intercourse with any other girl while his wife had lived with him; that, if any person paid anything of value to any girl to settle any trouble for him, he did not know anything about it, and did not do so himself, and did not authorize any one to do so.

#### Opinion.

It seems to us that the plaintiff by his pleadings and by the testimony given in the case made out a case entitling him to a judgment for divorce.

In Brueggerman v. Brueggerman, 191 S. W. 570 the Court of Civil Appeals at Austin held that where the testimony of plaintiff, if believed, entitled her to a divorce, and was corroborated by testimony of her mother, there being nothing to throw suspicion upon the veracity of the mother, refusal to grant a divorce without hearing the testimony of defendant is an abuse of legal discretion requiring reversal and remand. In this case the court said:

"In such cases it is within the discretion of the court to refuse to enter judgment in favor of the plaintiff, but this is a legal discretion and subject to review; and where, as in this case, the testimony is corroborated, and nothing appears to discredit the testimony of the corroborating witness, we do not think that the court could arbitrarily refuse the divorce. It may have been that such action of the court would have been justified had the testimony for the defendant been heard, but it was not."

See Besch v. Besch, 27 Tex. 390; McGowen v. McGowen, 52 Tex. 657; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded.