W. T. Terrell et al. v. Isabella McCown et al.

No. 579.—Decided November 22, 1897.

1. Supreme Court—Conflicting Rulings—Jurisdiction—Practice.

Where jurisdiction is obtained on the ground of conflicting rulings the Supreme Court is not confined to a consideration of the points involved in such conflict, but will determine whether any of the assignments made in the Court of Civil Appeals were well taken. (P. 240.)

2. Bill of Exceptions—Deposition—Motion to Suppress.

A bill of exceptions to the overruling of a motion to suppress a deposition should show the matters relied on as ground for the motion to have been true in fact. It is not sufficient that the bill show that the motion was made on certain grounds, without showing that the facts were so; nor will the fact that the court overruled the motion on the express ground that it came too late, show that he found or considered the facts to be as stated in the motion. (Pp. 241, 242.)

3. Independent Executors—Joint Powers—Death—Survival of Power.

Where a will appointed joint executors with power to sell property and provided for administration without control of the court, the power of sale so given, upon the death of one executor, passed to the survivor. Ch. 81, sec. 160, Gen. Laws, 1870, p. 141, does not require an abandonment of the rule to that effect settled by the decisions in this State. (Pp. 242 to 244.)

4. Executor—Agent—Delegating Discretion.

An executor cannot delegate discretionary powers, such as the right to decide to sell property of the estate and the terms of sale, but can delegate the mere execution of deeds on terms found satisfactory by himself. The act of an agent in executing a deed does not bind the estate, except as supplemented by the exercise of the executor's discretion in favor of the transaction; but there is no rule requiring these acts to be done together, or prescribing which shall be done first. (Pp. 244 to 246.)

5. Same.

If the agent negotiates a sale and executes deed in accordance with a power of attorney from the executor, which transaction is subsequently approved by the executor, this will be a sufficient exercise by the latter of the discretionary power of determining upon the sale, which he could not delegate to the agent, though it could not be accurately called a ratification. (Pp. 245, 246.)

6. Same.

Where such executor determined to sell certain land in small tracts, and thereupon authorized an agent to negotiate sales and subdivide to suit purchasers, and, as the sales were made, the facts concerning same were, from time to time, reported to the executor, and he considered such sales advantageous to the estate and assented thereto, such executor exercised all the discretionary powers conferred by the will necessary to a full execution of the power to sell thereby conferred. (Pp. 247, 248.)

7. Same—Charges.

See charges given upon above state of facts held to properly present the issue, and other charges requested held properly refused. (Pp. 244, 245, 250, 251.)

8. Evidence—Receipt—Ratification.

In a suit by the heirs of a husband and the heirs of his wife against purchasers from the agent of the independent executor of the husband, an instrument signed

by certain of the husband's heirs and by the wife's administrator, acknowledging receipt of the balance of the purchase money note given by such purchaser and ratifying the sale as to the heirs signing such instrument, was admissible, as evidence of payment by the purchasers, against the heirs of the deceased wife, and of ratification of sale by the husband's heirs signing it. (Pp. 249, 250.)

**9. Same.**

Judgments obtained by the executor upon purchase money notes taken in his name by the agent upon such sales, were admissible as circumstances tending to show his consent and acquiescence in the sales. (P. 249.)

**10. Evidence—Hearsay.**

Where exercise of his discretion in determining to sell the land is in issue, a declaration by an executor that he was going to sell it was not hearsay, but admissible evidence. (P. 251.)

**11. Witness—Examination—Responsive Answer.**

See opinion for question and answer thereto held responsive. (P. 251.)

**12. Estate—Debts—Question of Fact.**

See evidence under which the existence of debts against an estate to support a sale by the executor for their payment was held a question for the jury. (P. 252.)

**13. Will—Power to Sell—Debts—Burden of Proof.**

Where a will gives to an independent executor express power to sell the property for the payment of debts, it will be presumed that such debts existed, and the burden is not upon the purchaser to establish their existence in order to support the sale. (Distinguishing cases where power of sale was an implied one only.) (Pp. 254, 255.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Hill County.

*W. L. McDonald* and *Alexander, Clark & Hall*, for defendants in error.—A motion to suppress a deposition which is presented at the first term of the court after the filing of the deposition, is in time, and should be considered.

A donee of a power cannot, without express authority in the instrument conferring the power, delegate to another the personal trust or confidence which requires the exercise of his own discretion. Fuller v. O'Neil, 69 Texas, 349; Tynan v. Dullnig, 25 S. W. Rep., 465; McCormick v. Bush, 38 Texas, 314; Smith v. Sublett, 28 Texas, 163; Lyon v. Jerome, 37 Am. Dec., 271, 26 Wend., 485; Sebastian v. Johnson, 72 Ill., 282; St. Louis v. Priest, 88 Mo., 612; Speight v. Gaunt, 9 App. Cas., 1; 1 Am. & Eng. Encycl. Law (2nd Ed.), 1184, notes 3, 4 and 5, 972, note 2, 977, note 6; Mechem, Agency, sec. 184, et seq.; 2 Perry, Trusts, sec. 779; Fetter, Equity, 202.

It is a general rule, that acts which may be ratified are such as the ratifier might have himself done in the first instance, except that an agent cannot ratify acts of a sub-agent, who assumed an authority which could not be delegated. The office of executor is in a high degree personal, and must be executed according to the discretion of the executor himself, and he cannot appoint a sub-agent to act for him, in matters involving the exercise of discretion, without express authority in the will so to do, and consequently, he has no power to ratify the void acts of such a sub-agent. Acts of an executor without interest, or his substitute, which are beyond the scope of the power given him by

the testator in his will, are absolutely null and void, and, for this reason, cannot be ratified, while acts which are merely voidable may be ratified. Tynan v. Dullnig, 25 S. W. Rep., 465, 818; Shelton v. Marshall, 16 Texas, 345; Smith v. Sublett, 28 Texas, 163; McCormick v. Bush, 38 Texas, 314; O'Connor v. Arnold, 53 Ind., 203; Emerson v. Manufacturing Co., 12 Mass., 237; Wright v. Boynton, 72 Am. Dec., 319; Price v. Railway, 13 Ind., 61; McCracken v. San Francisco, 16 Cal., 591; Zottman v. San Francisco, 20 Cal., 102; Stetson v. Patten, 11 Am. Dec., 112; Ingraham v. Edwards, 64 Ill., 526; Negley v. Lindsey, 67 Pa. St., 228; Supervisors v. Arrighi, 54 Miss., 671; 1 Am. & Eng. Encycl. Law (2nd Ed.), 1184, 972, 977, 980; Story, Agency (5th Ed.), secs. 240, 241; Mechem, Agency, secs. 189-193.

It is a rule of common law that the authority to execute a contract must be of the same dignity as is required in the execution of the authority conferred, and so the ratification of an unauthorized act, the authority of which might have been by parol may be made in any manner expressing assent; but a deed or other sealed instrument cannot be ratified except by an instrument in writing under seal. Zimpleman v. Keating, 72 Texas, 318; Tynan v. Dullnig, 25 S. W. Rep., 465; Dispatch Line v. Bellamy Mfg. Co., 12 N. H., 205, 37 Am. Dec., 203; Grove v. Hodges, 55 Pa. St., 515; Blood v. Goodrich, 9 Wend., 68, 24 Am. Dec., 121; McCracken v. San Francisco, 16 Cal., 623; Clough v. Clough, 73 Me., 488; Pollard v. Gibbs, 55 Ga., 45; 14 Ga., 173; 5 Ga., 301; Muans v. Worthing, 4 Ill., 26; Paine v. Tucker, 21 Me., 138, 38 Am. Dec., 255; Palmer v. Williams, 24 Mich., 328; Adams v. Power, 52 Miss., 828; Hawkins v. McGroarty, 110 Mo., 550; Tappen v. Redfield, 5 N. J. Eq., 339; Hanford v. McNair, 9 Wend., 54; McDowell v. Simpson, 3 Watts, 129; 27 Am. Dec., 338; Turbeville v. Ryan, 1 Humph. (Tenn.), 113, 34 Am. Dec., 622; Ragan v. Chenault, 78 Ky., 545; 1 Am. and Eng. Ency. Law (2nd Ed.), 1211, note 2.

The unauthorized execution of a deed of ratification by one of two joint and acting administrators of the estate of a deceased wife, and the receipt by him of the consideration therefor, is no ratification by the estate, or heirs of the deceased husband, of a void sale of land belonging to his estate. A void sale and conveyance of land cannot be ratified. Lacy v. Williams, 8 Texas, 188; Collins v. McCarty, 68 Texas, 153; McLaren v. Jones, 33 S. W. Rep., 849; Daniels v. Mason, 38 S. W. Rep., 161; Story, Agency, secs., 240, 241; 1 Am. and Eng. Ency. Law (2nd Ed.), 1184; Bigelow, Estoppel, 147, 456.

A husband cannot ratify a void sale and conveyance of real estate, which is the separate property of his wife, in a manner not authorized by law. Sayles' Rev. Stats., art. 559, note 4; Cannon v. Boutwell, 53 Texas, 626.

The answer of a witness which is not responsive to a cross-interrogatory should be stricken out by the court, upon a written motion duly made to suppress the same on that ground, after notice to opposing counsel, which motion is acted upon before the trial of the case com-

mences, as the law requires. Sayles' Rev. Stats., art. 2235; Lee v. Stowe, 57 Texas, 444.

No act or omission of an executor or administrator can bind those interested in the estate, unless they, or the decedent, or the law authorized it. Bigelow, Estoppel, 147.

In a case where the face of the power of attorney and the evidence show that the deeds were made by an agent of the executor, who had been unlawfully granted powers which the executor could not delegate, the execution of the deed was a void transaction, and could not be ratified by the executor, especially, after all the debts of the estate had been paid; and the fact that the executor brought suit on a small portion of the vendor's lien notes taken by his sub-agent, and collected the balance of the purchase money due thereon, some of the heirs, without their knowledge or consent, being made parties plaintiff to said suit, but not receiving any of the money collected thereby, where they were not guilty of any acts of fraud or misrepresentation by which the other parties were mislead, deceived or prejudiced, said acts did not estop the heirs of the estate from afterward bringing suit to recover the land illegally sold and conveyed. Lacy v. Williams, 8 Texas, 188; Bigelow, Estoppel, 147, 456.

No act of a married woman or minor can operate as an estoppel as to her interest in land, or amount to a ratification of any prior act, unless such married woman or minor has been guilty in the doing of said prior act, of some actual, positive fraud or misrepresentation which has misled the other party to act to his detriment. Wright v. Doherty, 50 Texas, 41; Johnson v. Bryan, 62 Texas, 623; Williams v. Ellingsworth, 75 Texas, 483; McLaren v. Jones, 33 S. W. Rep., 849; Bigelow, Estoppel (5th Ed.), 147, 456.

Power given to an independent executor in a will to sell land to pay debts of the testator, does not authorize him to sell the land on a credit. Secs. 233, 236, 239, 244, 246, Probate Act, August 15, 1870; Reese v. Medlock, 27 Texas, 124; Mason v. Bryant, 31 S. W. Rep., 223, 139; 1 Am. & Eng. Encycl. Law, 360.

Where, as in this case, the executors were only given in the will such power of sale, "as a court would give them," the law in force at the time of making and executing said deeds of conveyance, is a limitation upon the power of said executors. The law then in force required that "all sales of lands to pay debts shall be on a credit of six months." Probate Act, August 15, 1870, secs. 160, 233, 236, 239, 244, 246; Pasch. Dig., arts. 1322, 1323, 1324, 1333, 1314; Bradbury v. Reed, 23 Texas, 258; Wells v. Mills, 22 Texas, 302; Hooper v. Castetter, 45 Neb., 67; Clark v. Jones, 27 S. W. Rep., 1009; 1 Jarman, Wills, 337, note 1.

Under the common law, in force in Texas, all the personal effects of an estate must be sold and exhausted before the land can be sold to pay debts. Where personal effects are proven to be ample to pay all debts of an estate there can be no valid sale of the lands belonging to

the estate. Arnold v. Dean, 61 Texas, 253; Minter v. Burnett, 38 S. W. Rep., 350; Wells v. Mills, 22 Texas, 302; Croswell, Executors and Administrators, secs. 467, 334.

In the absence of clear proof to the contrary, the debts of an estate will be presumed, after a long lapse of time, to have been paid or barred by limitation. Paul v. Willis, 69 Texas, 261; Duncan v. Veal, 49 Texas, 603; Easterling v. Blythe, 7 Texas, 210; Ward v. Barrows, 2 Ohio St., 241; Chamberlain v. Taylor, 36 Hun., 24; Hovey v. Chisholm, 56 Hun., 328; Swift's Appeal, 87 Pa. St., 502.

At the time when the conveyances were made by P. J. Willis, as executor, his co-executrix, Mrs. McCown, was dead, and his power was a naked one, not coupled with any interest in the land; the power did not survive her death, and he could not exercise it after that event. This was the rule at common law, as applied to naked powers not coupled with an interest in the estate, but it was changed as to executors by the English statute, 21 Hen. VIII., ch. 4, providing that, "The qualified and acting executor may execute the will, when the others do refuse to take upon him or them the administration and charge of the same testament and last will wherein they be so named as executors;" and although sec. 274 of our probate law of 1870, substantially adopted this provision as to executors generally, yet sec. 160 of the same statute exempted independent executors from all the provisions and requirements of that act, except those specified in sec. 158, requiring the will to be proved and recorded, and return of inventory and appraisement, and provided that such estate "shall become like any other property to be administered under a power chargeable in the hands of a trustee, and liable to execution in any court having jurisdiction." [Counsel discussed and distinguished the authorities cited by the Courts of Civil Appeals on this point.]

Persons purchasing land from an independent executor, who has no authority under the will to make the conveyance, must take notice of such want of power, and hence are not such innocent purchasers or possessors of the land in good faith, as to entitle them to compensation for improvements. Pasch. Dig., arts. 5300, note, 1147, 1327, 4977, 5004; Sayles' Rev. Stats., arts. 548a–4, 1826; Rev. Stats., 1879, art. 1826 (1895, art. 1879); Probate Act, August 15, 1870, sec. 247; Masterson's Heirs v. Stevens, 37 S. W. Rep., 364; 39 S. W. Rep., 292, 921; Robson v. Osborn, 13 Texas, 308; Rogers v. Bracken, 15 Texas, 568; Lynch v. Baxter, 4 Texas, 431; Williams v. McDonald, 13 Texas, 322; Walton v. Reager, 20 Texas, 103; Hatchett v. Conner, 30 Texas, 114; Ward v. Williams, 45 Texas, 617; Powell v. Davis, 19 Texas, 383; Miller v. Brownson, 50 Texas, 597; Morrill v. Bartlett, 58 Texas, 644; Thompson v. Comstock, 59 Texas, 318; House v. Stone, 64 Texas, 683; Parrish v. Jackson, 69 Texas, 614; Armstrong v. Oppenheimer, 84 Texas, 367; Schleicher v. Gatlin, 85 Texas, 274; Cooke v. Avery, 147 U. S., 375; 1 Am. & Eng. Encycl. Law (2nd ed), 987, note 1.

"A deed void on its face is a nullity. It is not a deed in fact and in

law, in a legal, or any just sense of the term." An instrument purporting to be a deed of conveyance of land, which shows on its face that it is executed by an agent and attorney in fact, by virtue of a power of attorney from the survivor of two joint independent executors, under a will referred to therein as the source of his authority for making same, which will or the law does not empower the executor with the authority to delegate to another his discretionary powers conferred on him in the will, is not such a deed as the statute requires to support the pleas of limitation. A deed void on its face is only admissible in evidence, under the ten years' statute of limitation, when duly registered as a written memorandum of title, other than a deed, to enable the party in possession claiming under it, to hold by such limitation to the extent of the boundaries described in the instrument. Pasch. Dig., arts. 4622, 4624, 4625, notes; Sayles' Rev. Stats., arts. 3194, 3195, notes; Wofford v. McKinna, 23 Texas, 36; Charle v. Saffold, 13 Texas, 93; Hunton v. Nichols, 55 Texas, 217; Cantagrel v. Von Lupin, 58 Texas, 571; Schleiher v. Gatlin, 85 Texas, 274.

*W. L. McDonald, Alexander, Clark & Hall* and *Hogg & Robertson*, also filed a printed argument in support of a motion for rehearing by defendants in error. The motion was overruled.

*Tarlton & Morrow* and *Crane & Ramsey*, for plaintiffs in error.—The motion to suppress the deposition of J. R. Peel comes too late. Rev. Stats., art. 2235.

The bill of exceptions reserved to the action of the trial court, because of its refusal to suppress the deposition of J. R. Peel, shows no legal ground for suppressing it. Burton v. Railway, 61 Texas, 526; Neyland v. Bendy, 69 Texas, 711; Tel. Co. v. Hinkle, 3 Texas Civ. App., 518; Railway v. Barnett, 26 S. W. Rep., 782.

Unless the bill of exceptions reserved on account of the court's refusal to suppress J. R. Peel's depositions shows cause for suppressing it, there was no error in overruling the motion, although this court should hold that it was made in proper time. The recital in the bill of exceptions that the trial court thought it did not come in proper time, would not make the motion good, unless it was intrinsically so. Tel. Co. v. Hinkle, 3 Texas Civ. App., 518; Railway v. Barnett, 26 S. W. Rep., 782.

The executor, P. J. Willis, residing at Galveston, had the right to employ an agent at the expense of the estate, to negotiate sales of the land in question, and to do and perform any other act or acts in reference to said sales, provided said Willis still retained the right to manage and did manage and control the said sales. Armstrong v. O'Brien, 83 Texas, 639; 7 Am. & Eng. Encycl. Law, 300.

That portion authorizing Tarver to execute deeds may be conceded as confering no such authority on him, yet the power of attorney was admissible in connection with Tarver's testimony and the deed made by

him, showing the land conveyed, the collection of the purchase money by him, the receipt of same by Willis, and in connection with the testimony of the several defendants that they entered into possession of the land so sold them by Tarver, for which the executor, Willis, received the money as aforesaid, and that they made permanent and valuable improvements on said land, believing they had title thereto, and with the fact that the greater portion of the plaintiffs and intervenors, while laboring under no disabilities, acquiesced in said sale for many years.

The judgments rendered by the District Court in the several suits in which P. J. Willis, executor, sued the purchasers of part of the land in controversy from W. B. Tarver, agent for P. J. Willis, and in which suit the heirs of Alex. McCown and the administrators of Nancy McCown made themselves parties plaintiff, and recovered from such purchaser the purchase money for such lands, were admissible in evidence to show an estoppel against the plaintiffs in such suit and those claiming under them, from denying the validity of such sales by Tarver. McCown v. Terrell, 29 S. W. Rep., 487; Morris v. Turner, 5 Texas Civ. App., 708.

The testimony does not show that Nancy McCown left no debts, but if it did, that question could not be raised in this case in a collateral attack upon the administrator's sale. Martin v. Robinson, 67 Texas, 368; Lyne v. Sandford, 82 Texas, 63; Halbert v. Martin, 30 S. W. Rep., 389.

This instrument was properly admitted, restricted as it was, to show payment of purchase money and ratification of acts of Tarver, and as a deed from J. G. McCown and those he represented. Sayles' Civ. Stats., art. 2245, notes 122, 166.

The testimony of W. B. Tarver mentioned in this assignment was admissible to show that P. J. Willis acquiesced in the terms of the sale that were made by Tarver. Giddings v. Butler, 47 Texas, 536; Brown v. McConnell, 56 Texas, 229; Armstrong v. O'Brien, 83 Texas, 639.

The testimony of Witty was admissible as a circumstance, showing in connection with the testimony of W. B. Tarver, that P. J. Willis came to Hill County about the time the land was sold, and tending to corroborate Tarver's testimony, to the effect that Willis ratified the sales made by Tarver.

The power to sell land to pay his debts, given by the will of Alex. McCown to his executors, was not a mere naked power, but was such a power as survived to P. J. Willis. Rev. Stats., arts. 1989, 1990; McCown v. Terrell, 29 S. W. Rep., 484; Anderson v. Stockdale, 62 Texas, 54; Peters v. Beverly, 10 Peters, 532; Williams v. Otey, 47 Am. Dec., 632; Johnson v. Bowden, 43 Texas, 671; Mays v. Blanton, 67 Texas, 247; Roberts v. Connellee, 71 Texas, 11; McDonald v. Hamblen, 78 Texas, 632; Bennett v. Kiber, 76 Texas, 385; Eskridge v. Patterson, 78 Texas, 419.

P. J. Willis residing at Galveston, had authority, as executor of the will of Alex. McCown, to appoint an agent in Hill County to negotiate

sales of land situated in that county, and if such agent made sales and. Willis, with knowledge of their terms, ratified them and accepted the purchase money for same, such sales divested the estate of Alex. Mc-Cown of all title to the land so sold. Armstrong v. O'Brien, 83 Texas, 639; Giddings v. Butler, 47 Texas, 536; 7 Am. & Eng. Encycl. Law, 300; Smith v. Swan, 2 Texas Civ. App., 563; McCown v. Terrell, 29 S. W. Rep., 487; Brown v. McConnell, 56 Texas, 229.

The facts recited in the charge were sufficient to vest title in defend-ants, and it was not necessary for Willis to ratify Tarvers' acts by deed. Giddings v. Butler, 47 Texas, 535; McCown v. Terrell, 29 S. W. Rep., 487; Brown v. McConnell, 56 Texas, 229; Newton v. Bronson, 67 Am. Dec., 89.

The court correctly charged the jury that the parties who had ·sued the purchasers of land from W. B. Tarver for the purchase money promised by said purchasers for said land, and recovered same, could not recover in this suit. McCown v. Terrell, 29 S. W. Rep., 487; Rev. Stats., art. 1201; Thomas v. Greer, 6 Texas, 372.

The executors having authority under the will of Alex. McCown to sell lands to pay debts without restriction as to the method of making same, the executors were authorized to sell either for cash or part credit, and a purchaser at any such sale would be protected. Schouler's Executors and Administrators, sec. 347; McDonough v. Cross, 40 Texas, 251; Heath v. Layne, 62 Texas, 686; Cassels v. Gibson, 27 S. W. Rep., 725; Rock v. Heald, 27 Texas, 523; McBee v. Johnson, 45 Texas, 634; French v. Grenet, 57 Texas, 273.

It was too late to object to the terms of payment after a sale has been made and the money collected. Espécially is this true when the sales have been acquiesced in and ratified by the heirs and the purchas-ers had twenty years uninterrupted possession, and made valuable im-provements. Heath v. Layne, 62 Texas, 686; Rock v. Heald, 27 Texas, 523; French v. Grenet, 57 Texas, 280.

DENMAN, Associate Justice.—Prior to 1855 Alexander McCown, subsequent to his marriage with Nancy McCown, acquired the Mc-Cracken league and labor of land in Hill County, Texas, the title to which is in controversy herein. On the 26th day of September, 1855, he executed his will, which provided: (1) "That I do hereby appoint my beloved wife Nancy McCown and my worthy and trusty friend Peter J. Willis executors of this my last will and testament, and I direct that the county court have nothing to do with my estate or with its settlement other than to probate and registry of my will and an in-ventory of my estate, and should my friend P. J. Willis decline assist-ing my wife in the execution of this trust, then I direct that my said wife be not required to give any bond for the execution of this will. (2) I direct that all my just debts be paid as soon as possible, for which my executors shall have all the power to raise funds out of my effects that a court would give them, and for this purpose to sell and

convey lands or other property." The will then refers to the wife's
separate property as being of record, gives her the household furniture,
and provides that the balance of the property being community should
go according to law, except that a certain sister should be excluded.
McCown died October 15, 1855, and the will was probated, and Nancy
McCown and P. J. Willis were appointed and qualified as executors on
November 26, 1855, by taking the oath and filing a bond. The in-
ventory of the estate, filed according to law, showed personal and real
property, variously estimated to have been worth from fifty to one hun-
dred thousand dollars; a large portion of the personal property being
slaves and most of the lands being unproductive. The record does not
disclose the doings of the executors except in a most general way. It
appears however that some of the slaves were hired out, some of them
sold, and the remainder were freed, and that the executors did not make
any sale of lands during the life time of Nancy McCown, who died
intestate in 1870. Chambers was appointed administrator of her estate
and continued to act as such until July, 1876, when J. T. and Annie
E. Pierce, husband and wife, were appointed joint administrators to
succeed Chambers, and they acted as such until 1888. On March 20,
1871, and after the death of Nancy McCown, P. J. Willis executed
the following instrument:

State of Texas, )
'County of Hill. }
   "Know all men by these presents, I, P. J. Willis, executor of the last
will and testament of Alex. McCown, deceased, of Montgomery County,
Texas (for which reference is here made to said will), reposing especial
confidence in the skill and integrity of Wm. B. Tarver, of the County
of Hill, and State aforesaid, have made, constituted and appointed, and
do by these presents, nominate, make, constitute and appoint the said
Wm. B. Tarver my true and lawful attorney in fact for me, and in my
name as executor of the said Alexander McCown, deceased, to convey
and sell and good and sufficient titles and conveyances make to all or any
part of the league of land in Hill County, Texas, about eight miles N.
W. of the town of Hillsboro, and known as the Amanda F. McCracken
League, hereby given to my said attorney, Wm. B. Tarver, full power
and authority in the sale and conveyance of said land the same that I
could do if personally present, and to receive and receipt for any money
or moneys arising from the sale of said land, hereby ratifying and con-
firming any and all legal acts done by my said attorney by virtue of the
premises. Witness my hand and scroll for seal, at Hillsboro, Texas,
this March 20, 1871.
       (Signed)            "P. J. Willis, Executor of A. McCown."

   W. B. Tarver in the name of P. J. Willis, the executor of the estate
of Alexander McCown, by said Tarver, agent, during the years 1871-2,
and after the execution of said power of attorney, conveyed to various

persons, small portions of said league, receiving therefor part cash and part notes executed by the different purchasers, payable to P. J. Willis as such executor, and at the time of such sales surveyed such tracts and placed the respective purchasers in possession; the lands being at that time unimproved, such purchasers placed thereon valuable improvements. The lands thus sold by Willis through Tarver constituted the greater portion of said league and labor. In March and May, 1873, Willis, as executor, executed two deeds to small tracts to two of defendants. Alexander McCown and his wife, Nancy McCown, having both died without issue, the heirs of Alexander McCown, in 1873, sued the administrator and the heirs of Nancy McCown, claiming a portion of the estate accumulated in Texas by Alexander and Nancy McCown during their marriage. The result of such litigation was that the heirs of Alexander McCown recovered an interest in said property. After Pierce and wife became administrators of the estate of Nancy McCown they caused to be sold, under orders of the probate court, a three-quarter interest in various small tracts of land out of the remainder of said league left after the sales made by Tarver and Willis as above stated, and at the same time the heirs of Alexander McCown, through their attorney in fact, conveyed to the purchasers under such probate sales a one-fourth undivided interest in each of said tracts.

This is an action of trespass to try title brought by the heirs of Alexander McCown and the heirs of Nancy McCown to recover from the defendants, claiming under the sales above mentioned, said league and labor; the said heirs of Alexander McCown suing as original plaintiffs, and the heirs of Nancy McCown suing as intervenors. Defendants pleaded not guilty, three, five and ten years' limitations, and improvements in good faith. There was a verdict and judgment for defendants, from which an appeal was taken to the Court of Civil Appeals of the Fifth District, where the judgment was reversed and the cause remanded as shown by the opinion of that court. 29 S. W. Rep., 484. Upon a second trial verdict and judgment were for defendants, from which plaintiff and intervenors appealed to the Court of Civil Appeals for the Fifth District, and the cause being subsequently transferred by the Supreme Court to the Court of Civil Appeals for the Fourth District, that court reversed the judgment of the District Court and ordered the cause remanded for another trial. Thereupon the defendants in the court below applied to this court for a writ of error, upon the ground that said two courts of civil appeals in said opinions held differently upon several questions of law involved herein. This court having granted the application for writ of error and assumed jurisdiction upon the ground stated, it becomes necessary to determine whether any of the assignments of error made in the Court of Civil Appeals upon the last appeal were well taken.

The first assignment of error complains of the action of the trial court in overruling plaintiffs' and intervenors' motion to suppress the depositions of J. R. Peel. The bill of exceptions reserved to the action

· of the court upon that motion is substantially as follows: "Be it remembered that upon the call for trial of this cause counsel for plaintiffs presented to the court the following motion to suppress the depositions of the witness, J. R. Peel [here the bill sets out in full the motion in which various facts and circumstances are detailed as constituting grounds for the suppression of such depositions, said motion being too long to copy here], and it further appeared to the court that the last term of the District Court of Hill County, Texas, was begun on the 4th day of March, 1895, and upon inspection of the envelope containing said depositions of J. R. Peel it appeared that said depositions were duly returned to and filed in said District Court on the 8th day of March, 1895, and that plaintiffs and intervenors obtained a continuance of this cause on the 11th day of March, 1895, and the court being of opinion that said motion to suppress said depositions was not made and determined at the first term of said court after said depositions had been filed, as is required by article 2235, of the Revised Civil Statutes of Texas, as amended, came too late, and overruled said motion; to which ruling of the court the plaintiffs and intervenors then and there excepted and now here tender this their bill of exceptions to said ruling and ask that the same be signed, which is accordingly done." It will be observed that the bill does not state that the facts set out in the motion are true, and in the absence of such a statement we cannot assume them to be. The only facts stated in the bill are: (1) that upon a calling of the cause for trial plaintiffs and intervenors presented the motion set out therein to suppress the depositions; (2) that the previous term of the District Court of Hill County began March 4, 1895; (3) that the depositions of Peel were returned into said court March 8, 1895; (4) that plaintiffs and intervenors obtained a continuance March 11, 1895. It is too clear fo argument that these facts would not justify this court in holding that the District Court erred in refusing to quash the depositions. If plaintiffs and intervenors wished to have this court consider any of the facts set up in their motion in passing upon the ruling of the trial court, they should have had that court determine and state in the bill which of such facts are true. But it appears from the bill that the trial court overruled the motion because in his opinion it was made too late, and counsel for plaintiffs and intervenors in their brief urge, that "the ruling of the court that the motion to suppress came too late, was a virtual admission that it was good if it had been presented in time, and this court will only pass upon the question which the court below passed upon, and which is presented here for revision, viz: whether or not the objections to the deposition were presented in time?" We cannot accede to this proposition. The trial court overruled the motion to quash the deposition. Upon the trial defendants obtained a verdict and judgment. Plaintiffs and intervenors have a legal right to seek to have that verdict and judgment set aside upon the ground that the trial court erred in its ruling, and not upon the ground that it erred in the reasons given therefor. In order to justify this court in reversing the judgment it

devolves upon appellants to show affirmatively, by the record, facts demonstrating the error of the ruling of the trial court upon the motion. Being of opinion that the facts stated in the bill do not show that the trial court erred in overruling the motion we must hold the assignment of error not well taken, without regard to the question whether the motion came too late—upon which point we are not called upon to express an opinion.

Under various assignments it is strenuously urged that the power to sell conferred by the will was a bare power, not coupled with any interest, and did not survive to Willis upon the death of Nancy McCown, and that therefore all the deeds made by Willis either in person or through Tarver were without authority and passed no title. It would seem that this question has been settled by adjudications in this State. Johnson v. Bowden, 43 Texas, 670; Mayes v. Blanton, 67 Texas, 245; Roberts v. Connellee, 71 Texas, 11; Bennett v. Kiber, 76 Texas, 385; Eskridge v. Patterson, 78 Texas, 417. But it is insisted that none of the cases above, except Roberts v. Connellee, were governed by Ch. 81, p. 141, General Laws, 1870, and that in that case section 160 of that act was overlooked, and therefore it is not authority in this case. It is urged, that at common law the power would not survive; that to change the law in that respect the English statute referred to in Johnson v. Bowden was enacted; that to accomplish a similar result a like statute was at an early day enacted in Texas; that under and by reason of such statute Johnson v. Bowden was correctly decided; that section 160 of the act of 1870, supra, which is as follows: "When a will contains directions that no action be had in the District Court in the administration of the estate, except to prove and record the same, or to prove and record it and return an inventory and appraisement, no other provisions of this act, except as declared in subdivision 4, of section 158, shall apply to such estate; but the same shall become like any other property to be administered under a power, chargeable in the hands of a trustee, and liable to execution in any court having jurisdiction," exempted independent executors from the operation of the other provisions of said act providing for the survival of the power to one executor in case of the death of the other; and that therefore the question as to whether Willis had power to sell after Nancy McCown's death must be determined, under the common law, adversely to such power. We do not understand that the decision in Johnson v. Bowden was based upon the statute, or in other words that it would have been ruled differently had there been no statute on the subject. The learned judge in delivering the opinion, after quoting from several authors, used this language: "By this will the power was given the executors without naming them. The payment of the debts and the general management and settlement of the estate was committed to their charge. And whether in doing this it would be to the advantage of the estate to sell these lots was certainly intrusted to the discretion of her executors virtute officii. As the duty of settling the estate devolved alone on

Gooch by the renunciation of Herrill, he was unquestionably intrusted with the same discretion in the exercise of the powers with which the executors were intrusted for this purpose. If this was not so, the re- nunciation of the trust by one executor would render the qualification of the other nugatory. * * * As the testatrix must have known by the death, renunciation, or neglect of óne of the parties she nominated as executors of her estate its administration would be committed to the sole charge of the others, we may infer that she contemplated and in- tended the powers committed to them as executors should not be re- garded as a personal or individual trust, but should be exercised by such one of them as might discharge the duties of the executorship."

Our probate laws from an early day have provided that a testator might by will direct that no action should be had in the probate court in the administration of his estate. This law was in force when Mc- Cown executed his will. He availed himself thereof and appointed exec- utors to administer his estate outside of the court. His leading intent was that his estate should not be administered by the probate court, and the appointment of his executors was merely a means of effecting such intent. In providing such means he used no language indicating that one should not act and that the estate should be thrown back into the pro- bate court in case of the death of the other. In such an event it is but fair and in accord with the general purpose of the testator to presume that he intended the survivor to act, for in the absence of such a pre- sumption the leading intent of the testator would be defeated. We in- dulge a similar presumption in cases where the testator provides that the probate court shall take no action in the administration of his estate, appoints an executor, but omits to confer upon him any power; for in such case we presume he intended the executor to have power to sell property to pay debts, since in the absence of such a power the estate must be administered in the probate court, contrary to the expressed in- tent of the testator. If in such case a power to sell is to be raised by presumption or implication, certainly the power expressly conferred by the will must be continued in the surviving executor.

Again, if we read the language of the will in the light of the circum- stances surrounding the testator, additional grounds will be found for this presumption. The testator contemplated that one of the executors might be called upon to act alone, and provided that if Willis should decline his wife should not be required to give bond. He did not deem it necessary to say anything about her power of sale, probably for the reason that he was aware that if from any cause it should become neces- sary for one of the executors to act alone the law then in force would clothe him with all the power he had conferred upon his executors as a class. We do not think section 160 of the act of 1870 was intended to change the rule of law upon this question. The latter part of the sec- tion shows clearly that it did not intend to return the estate in a case like this into the probate court, for it provides that the property in the hands of the independent executors "shall become, etc.," showing

clearly that the creditors were expected to reach it in all events in the hands of the executor. Therefore it would seem necessary for Willis' power of sale to be continued under this new statute, for otherwise he would have been compelled to allow the property to be subjected to execution for the payment of the debts.

We are of opinion that the power of sale survived to Willis upon the death of Nancy McCown, and that the assignments referred to above are not well taken.

Under other assignments of error it is urged, that since said power of attorney shows on its face that Willis thereby attempted to delegate to Tarver the discretionary power to sell conferred upon him by the will, such power of attorney is void and was not admissible in evidence. It has been held in this State, in accordance as we think with sound principle, (1) that an executor cannot delegate the discretionary powers conferred upon him by the will, (2) that he can delegate such of those powers as do not involve the exercise of discretion, and that the mere execution of deeds in accordance with terms satisfactory to the executor is not the exercise of a discretionary power. This latter proposition was distinctly decided by the Court of Civil Appeals in a well-considered opinion in Smith v. Swan, 2 Texas Civ. App., 563, and an application for writ of error therein, complaining only that the court erred in holding that proposition of law, was refused by this court. In so far as the instrument attempted to delegate the first class of powers it was ineffective, but in so far as it delegated the mere power to execute deeds in the name of Willis it was valid. Therefore it was admissible in evidence and said assignments are not well taken.

The fifteenth assignment of error is as follows: "The trial court erred in the fifth subdivision of its general charge to the jury, as follows: 'The court instructs you further that said P. J. Willis had no power to confer, by power of attorney, upon W. B. Tarver, the authority of taking control and disposing of any of the estate of Alex. McCown, or of exercising acts of discretion in reference to the sale of any of the estate, and said power of attorney, in so far as it undertook and purported to convey such power and authority to W. B. Tarver, would be inoperative and ineffective; but the said Willis was authorized by law to confer upon said Tarver authority to negotiate sales, deliver deeds and receipts for purchase money; and in the event you find that Tarver did negotiate sales and exercise acts of discretion concerning the sales and disposition of said lands belonging to the estate of Alex. McCown, then you will enquire whether or not the said P. J. Willis, executor as aforesaid, was informed of such sales, and whether or not with full knowledge of all the facts, he ratified and confirmed same, and accepted and appropriated the proceeds thereof to the estate of Alex. McCown; and if you so find, then such sales, as made by Tarver, would be binding upon the heirs of said Alex. McCown;' and in refusing to give the jury the special instruction No. 2, requested by the appellants, as follows: 'The recitations in the power of attorney from P. J. Willis, ex-

ecutor, to W. B. Tarver, under which some of the defendants claim title, and the uncontroverted testimony of W. B. Tarver himself, show that P. J. Willis, executor, attempted to delegate to said Tarver the discretionary power of selling and making title to the lands which were conveyed to the several defendants claiming under that power of attorney; said power of attorney is void, and the defendants claiming under such conveyances by W. B. Tarver took no titles to the land thus attempted to be conveyed to them, and you will therefore find against those defendants claiming title under the conveyances made by said Tarver, in favor of such of the plaintiffs and intervenors as you may find are not barred by the statute of limitation, in accordance with other instructions herewith given you;' because such special instruction is the correct interpretation of the power of attorney, and said general charge is an erroneous statement of the law in telling the jury that 'the said Willis was authorized by the law to confer upon said Tarver the authority to negotiate sales, deliver deeds, and receipt for purchase money;' all of which are acts of discretion, and did not leave the jury any room to determine what acts of discretion were to have been exercised, or may have been exercised, under said power of attorney, and the acts of ratification were insufficient in law."

From what has been said above it results that if Willis in the exercise of his judgment and discretion determined, that it was to the interest of the estate to sell property, that this particular land should be sold, that it should be sold in parcels, and the terms of sale, then Tarver under the power of attorney could, for him and in his name, have executed the deeds and received the consideration, such acts being merely executive in character. Therefore if the executor had in person before the sales were made determined all the questions involving the exercise of any judgment or discretion, he could legally have consummated the sales in accordance with such determination, through the agent, without having in person signed any instrument except the power of attorney. It logically follows that if he performed some of those discretionary acts before the agent executed the deed, and thereafter, with full knowledge of all the facts, performed others approving the sale, the deed would bind the estate. We think it also follows that if the agent in the first instance executed the deed in the name of the executor, and thereafter, when informed thereof, with knowledge of all the facts, the latter, in the exercise of his discretionary powers, approves of and ratifies the sale, the deed will bind the estate. Giddings v. Butler, 47 Texas, 535. The true principle underlying the whole question is, that the mere act of executing the deed by such an agent is never, of and by itself, sufficient to bind the estate, but needs to be supplemented by the exercise of the executor's discretionary powers in favor of the transaction evidenced thereby; but at the same time it is not, even standing alone, a void act. In order to fully execute the power of sale conferred upon the executor two classes of acts must be performed, (1) those involving the exercise of discretion or

judgment, and (2) those which do not, but are merely executive in character; but while it takes both to so execute the power as to bind the estate, and while the former must be performed by the executor and need not be evidenced by writing, the latter may be done through an agent; and there is no rule of law requiring that both classes of acts be performed at the same time or prescribing which shall be done first. In Newton v. Bronson, 13 N. Y. (3 Kernan), the will authorized the executors to sell and convey, in their discretion, at public or private sale, and upon such terms as they might deem proper. Only one executor qualified. "Ogden & Jones executed the contract sought to be enforced in the name of the defendant as executor. There was no proof that they were authorized in writing by defendant to do so, or that they had any express authority from him to execute the contract at the time it was made; but there was evidence of declarations and acts by the defendant as executor acknowledging the validity of the contract; and letters written by him as executor to the plaintiff acknowledging receipts of payment upon the contract were read in evidence." It was urged there, as here, that the contract was void even if Ogden & Jones were authorized to make it, because defendant could not delegate authority to contract for the sale of the land, and that no ratification or acceptance of money upon it could render it valid. In passing upon this question the court said: "The reason of the maxim, delegatus non potest delegare, however, is that, in the cases to which it applies, the first constituent has a right to the personal judgment, care, and skill of his agent. Assuming that Ogden & Jones, in this case, acted without authority from the defendant, the latter had a right, when the contract came to his knowledge, either to repudiate, or to confirm it. In determining upon one or the other course, he brought into exercise those personal qualifications on account of which he is presumed to have been selected by the testator. The law does not allow him to commit the power with which he is entrusted to another, for perhaps that other would bind the estate to a transaction which the former might not have considered advantageous and safe if he had acted directly upon it. The reason fails where the person actually entrusted with the authority has, with a full knowledge of the facts, ratified the act of one who has assumed to act as his agent." We think it inaccurate to characterize the subsequent approval of the terms of the contract by the executor as a ratification, for it is a mere exercise by him of the discretionary powers which he could not delegate. So in the case before us, if the executor, after Tarver executed a deed or deeds, upon being fully informed of all the facts, approved of the terms of the sale or sales, such approval was not, accurately speaking, a ratification of the act of execution of the deed or deeds, but was a performance by him of the discretionary acts necessary, in addition to the execution of the deed by Tarver, to a complete execution of the power of sale conferred by the will.

Having determined the principles of law applicable to such transactions, we must, in order to test the correctness of the charge set out in the above assignment, look to the evidence submitted to the jury upon

the issue as to whether Willis did, in fact, exercise the discretionary powers conferred upon him by the will. The power of attorney executed a few months after the death of Nancy McCown shows on its face that the executor had then determined upon a sale of this very land in bulk or in parcels as might be most advisable, thereby exercising one of the most important discretionary powers vested in him. The sales were mostly in small tracts, for part cash and part on time, the notes for deferred payments being payable to Willis as executor, and reciting that the deeds had been signed by "Peter J. Willis, executor of Alexander McCown, deceased, by W. B. Tarver, agent," the dates of such sales extending over a period of several years and the deeds being placed on record from time to time as such sales were made. R. J. Sledge, one of the purchasers under deed executed by Tarver soon after the date of the power of attorney, testified, "My recollection is that W. B. Tarver showed me the land and I closed the trade with Willis." He also testified that he thought he paid the cash payment ($2000) to Willis, and that he executed and afterwards paid to Willis his note for the balance of the purchase money $2250. The agent Tarver testified, that he sold the lands in parcels to various parties, taking in payment part cash and balance in vendor's lien notes of the respective purchasers payable to P. J. Willis executor of Alexander McCown; that he remitted the proceeds of such sales to Willis from time to time; and that "P. J. Willis acknowledged the receipt of said money in each and every instance, sometimes by letter and several times by personally saying so. His letters to me uniformly expressed that he was well satisfied with the sales I made and the payments thereon. When I ceased to act as agent and attorney in fact for said Willis, about '73 or '74, I turned over to his order to Abbott and McDonald, attorneys at Hillsboro, Texas, such papers as belonged to said business, together with itemized and full written statement of the transactions I had had with reference to the sale and conveyance of said land." Witty, one of the purchasers, testified "I was with P. J. Willis about three times, and I never conversed with him on any other subject except this land. The first time was in March, 1871, when he was first at my house and wanted to sell the land. I cannot repeat all the language, but have stated the substance. The second time I met him was in Hillsboro; I was paying him some money that I owed him, in W. B. Tarver's office. Myself, Tarver, and Willis were the only ones present; the time I cannot tell. The third time I met him was in Hillsboro, in W. B. Tarver's office. I cannot recollect the year, but think it was in 1872." The record shows that Willis procured judgments upon some of the notes for the amounts thereof and for foreclosure of the vendor's liens, and was prosecuting suits upon others at the time of his death, and that after Tarver had, in his name, sold most of the lands he, in person, executed two deeds to portions of what was left and received a reconveyance from Sledge of part of the tract Tarver had deeded him as aforesaid. There is no evidence in the record that he at any time questioned

the titles of any of the purchasers, and none of the heirs are shown to have claimed that Willis did not exercise the discretionary powers vested in him, while he was living and could make known the extent of his knowledge of and participation in the sales; and the record does not show that any effort was made by the heirs to ascertain whether the papers in Willis' possession at the time of his death relating to the estate of Alexander McCown tended to rebut the testimony of Tarver to the effect that Willis was cognizant of and approved by letter and otherwise all said sales. The record further shows, that, though said numerous conveyances were soon after execution placed of record, and the claimants thereof went into possession, making valuable improvements, this suit was not brought by the heirs of Alexander McCown until July 8, 1890, and by the intervention of the heirs of Nancy McCown on March 3, 1891. From this brief reference to the testimony it is clear that the jury might have found therefrom, that Willis determined to sell this particular land in small tracts, that he thereupon authorized Tarver to negotiate sales and subdivide to suit purchasers, that as the sales were made the facts concerning same were from time to time as the business progressed reported to him, that upon such reports he considered the sales to be advantageous to the estate and assented thereto. If these things be true then Willis exercised all the discretionary powers conferred upon him by the will and such action on his part, in connection with the execution of the deeds by his agent Tarver, was all that was necessary to a full execution of the power to sell conferred by the will. The fact that Willis availed himself of the judgment and services of Tarver in the performance of these discretionary powers would not render the sales void. When a purchaser dealt with Tarver the law charged him with knowledge of the fact that, notwithstanding the general terms of the power of attorney, the agent's powers were not general, that he could only bind the estate by the exercise thereunder of powers of an executive character, and that as to discretionary matters, such as fixing price and terms of sale, his acts could not bind the estate, but at most could only be advisory to the executor, whose assent thereto was necessary. If the purchaser accepted the deed from Tarver and delivered to him the consideration in advance of the exercise by the executor of such discretionary powers, taking his chances as to whether their exercise would result in a completion of the sale so as to bind the estate, and if Willis thereafter, upon knowledge of all the facts, accepted the terms agreed upon between the purchaser and Tarver, we see no reason for holding that the transaction is any less binding upon the estate than if Willis had exercised all his discretionary powers before Tarver signed the deed. We understand the charge of the court set out in the above assignment as being in accord with these views. We think the jury could not have understood from it that Willis could confer upon Tarver any power to agree upon the terms of any sale except subject to his subsequent approval. From what has been said, it

results that we are of opinion that there was no error in giving and re-
fusing the charges set out in the assignment as therein stated.

We are of opinion that the "judgments of the District Court of Hill
County, Texas, in the suits of P. J. Willis, executor of Alexander Mc-
Cown, against J. M. Moore and various persons, for parts of the pur-
chase money for portions of the land in controversy purchased by them
from W. B. Tarver under the power of attorney to him from P. J.
Willis executor," were properly admitted in evidence, as circumstances
tending to show the acquiesence and consent of the executor to the sales
and also the manner in which the purchasers paid for the land, and that
the assignment calling in question the action of the lower court in ad-
mitting such testimony is not well taken.

On the trial defendants offered in evidence a deed executed by certain
named heirs of Alexander McCown, through their duly constituted
attorney, and by John T. Pierce, one of the administrators of the estate
of Nancy McCown, which deed was substantially as follows: "Whereas
Willis, executor of Alexander McCown, by his agent W. B. Tarver,
did, on the 13th of May, 1871, execute to J. J. Gathings a deed to
430 acres of the land in controversy, and whereas said Gathings is de-
sirous of having said deed ratified by the heirs of Alexander McCown,
therefore, in consideration of $180 in gold, being balance of purchase
money of said land, we John T. Pierce, acting for his wife, Annie E.
Pierce, and as administrator of the estate of N. A. McCown, and J. G.
McCown, agent and attorney in fact for certain named heirs of Alexan-
der McCown, do hereby ratify and confirm said deed and relinquish all
claim and title in the land by reason of our heirship as aforesaid." The
record shows that the parties named in the instrument as heirs of Alex-
ander McCown had given J. G. McCown full power to act for them.
In connection with the admission of this deed in evidence the record
states the following facts:  "The said instrument was admitted, not as
a conveyance binding on the estate represented by John T. Pierce, but
as evidence of payment of purchase money to John T. Pierce, husband
of intervenor, Annie E. Pierce, and to the heirs of Alexander McCown,
and as an act of ratification in those who had legally signed it, and the
jury were so instructed at the time the deed was admitted. Some of the
appellees claim under J. J. Gathings." One of the assignments of error
complains of the action of the trial court, in admitting said deed in evi-
dence.  This deed was dated March 6, 1878, after the death of Willis,
and therefore the heirs of Alexander McCown, who were asserting claim
to a portion of the property, and the estate of Nancy McCown, repre-
sented by Pierce and wife, clearly had authority to collect and receipt
for the balance of the purchase money paid by Gathings, and the deed
was admissible as showing such payment.  Gathings having purchased
under a deed reserving a vendor's lien had the right, when sued herein
by the heirs, to show that he had paid the balance of the purchase
money.  The heirs of Alexander McCown also had the right to ratify
the deed in so far as they might be supposed to have any interest in the

land deeded to Gathings, and for that purpose the deed was admissible. We do not understand from its terms that it purports to ratify on the part of the heirs of Nancy McCown, but even if it had done so the court could not have excluded it from the jury, but it might have been its duty upon request of the heirs of Nancy McCown to have instructed that it could not be considered as against them for any purpose other than showing the payment of the money to the executor of Nancy McCown, through whom they inherited. We therefore are of opinion that the assignment complaining of the introduction of the deed in evidence must be overruled.

We are also of opinion that the testimony of Witty and that of Tarver referred to above were admissible as circumstances tending to show Willis' knowledge of and assent to the sales, and that the assignments complaining of the action of the trial court in admitting same must be overruled.

It is claimed that the court erred in giving the following charge: "If you believe from the evidence that P. J. Willis, executor, instituted suit in the District Court of Hill County to collect the purchase money for lands which had been conveyed to the defendants in this case, or those under whom they claimed, by W. B. Tarver, agent and attorney in fact for P. J. Willis, executor, and that in such suits Annie E. Pierce and John T. Pierce as administratrix and administrator of the estate of Nancy McCown and certain of the heirs of Alexander McCown who are parties to this suit, or whose descendants are parties to this suit, made themselves parties in said suits for the purchase money and prosecuted the same to judgments which were paid by the defendants or those under whom they claimed, you will find for the defendants claiming the land on which said liens were foreclosed as against the heirs of Nancy McCown and as against such of the heirs of Alexander McCown as became parties to such suit." As above stated, the power of attorney on its face shows that Willis had determined to sell this land in bulk or in parcels, and the notes taken in his name informed him that the sales had been made in small tracts; the deeds executed by him through his agent were referred to in the notes and both informed him fully as to the terms of the sale. By filing suit upon the notes he demanded the payment of the balance of the purchase money. The doing of all these things involved a complete exercise of all the discretionary powers vested in him by the will in favor of the sales, and taken in connection with the deeds executed by him through Tarver shows a complete execution of the power of sale contained in the will, and the estate was thereby bound. Therefore both plaintiffs and intervenors who claim herein through such estate were bound by such sales. The fact that the suits were prosecuted by the heirs and executors as recited in the charge after Willis' death is of no consequence except as indicating how the notes were paid, for, as above stated, the record facts as they existed at the date of Willis' death showed a complete execution of the power of sale conferred by Alexander McCown upon his executors as to

the tracts of land referred to in this charge.　We are therefore of the opinion that there was no error in the charge, and that the assignment must be overruled.

Error is assigned upon the action of the court in refusing to give the following charge:　"If you find from the evidence that there were no valid debts against the estate of Alex. McCown existing at the date of the power of attorney from P. J. Willis, executor, to W. B. Tarver, or at the date of the conveyances made by P. J. Willis to the defendants Terrell and Gee, then said Willis, as executor of Alex. McCown's estate, had no power or authority to make said power of attorney, or to make said conveyances, and if you so find you will return a verdict against all the defendants in favor of all the plaintiffs and intervenors whom you may find under other instructions herewith given you not to be barred by the statute of limitations.　With reference to the question of the existence of debts against the estate of Alex McCown at the time hereinbefore mentioned, you are further instructed that the burden of proof is upon the defendant to establish by a fair preponderance of the evidence that there were valid debts existing against said estate at the time hereinbefore mentioned; unless they have done so you will find against them on this issue."　This charge was properly refused because in no event could a recovery have been had against defendants for all the lands sold by Pierce and wife as administrators of the estate of Nancy McCown and by the heirs of Alexander McCown through their attorney.　That part of the charge relating to the burden of proof whether correct or not was properly refused because included in the general charge of the court.

Another assignment of error is as follows:　"The trial court erred in overruling appellants' objection to the answer of the witness, J. R. Peel, to the third cross-interrogatory propounded to him by the appellees, as follows: '3rd cross-interrogatory: 'You only remember that Foster was satisfied by the transfer of said judgment to one Smith or to some one else, do you not?　You could not undertake to say when or how the McCown estate paid the judgment, could you?'　To which witness answered: 'Peter Willis stated to me that he was going up in the northern part of the State to sell lands belonging to the estate to pay off the judgment;' for the reason that said testimony is hearsay of the rankest kind, and said answer is not responsive to said cross-interrogatory."　We do not think the answer was hearsay because the declarations of Willis were direct evidence of the fact that he had, in the exercise of the discretionary powers conferred by the will, determined to sell this land and because his declaration to the attorney who was seeking to collect the judgment against him was evidence that it had not then been paid and of the source from which the means to pay it was to be derived.　It was responsive because the witness could not, with this information from the executor in his possession, have fully and truly answered the questions without disclosing that the declaration of Willis was all the information he had on the subject.　The answer

in connection with his entire testimony tended to show that he knew more than was implied by the first question, that the judgment had not been paid at the time of the conversation, and that it was paid out of these sales. This assignment is therefore not well taken.

The testimony as to whether there were debts against the estate of Alexander McCown at the time of these sales was conflicting,—that tending to show that there were, was mainly, the conferring upon the executors of power to sell to pay his debts, the fact that the executor did sell, aided by the ordinary presumption that he was not in so doing violating the trust and by such inferences as the jury might have drawn from long acquiescence in such acts until by reason of the death of the executor his evidence cannot be had as to the condition of the estate, the fact that there is no evidence showing expenses incurred by the executors in the management and preservation of the estate during so many years nor what portion of proceeds of sales of personal property if any was received by Nancy McCown during her life, and the fact that on September 20, 1870, in the District Court of Montgomery County a judgment was rendered in favor of Foster against the estate of Alexander McCown for $1556.44, with interest from April, 1861, and $3320, with interest from June, 1857, amounting in all to nearly $10,000, coupled with the fact that Peel, one of the attorneys for plaintiff therein, testified that collection of the judgment was "held up at request of Peter J. Willis who promised to use every effort in the settlement of it," and that his testimony leaves it in doubt whether the last payment of $2300 was made prior to "sometime in June or July, 1873," he stating, "The final settlement thereof was made with me, as hereinbefore stated. Peter Willis stated to me that he was going up in the northern part of the State to sell land belonging to the estate to pay off the judgment,—did afterwards pay the balance as above stated;" the evidence tending to show that there were no debts was mainly, the inventory of estate of Alexander McCown, showing real and personal property valued at $55,000 in January, 1856, that the estate was always considered a wealthy one,—a number of witnesses who did not claim to have had any personal connection with the matter testified that they understood that the Foster judgment was paid before the death of Nancy McCown, but do not show the source of their information,—testimony to the effect that after the death of Alexander McCown there came into the hands of the executors, from sales of negroes and other personal property and rents, large sums of money, and that Mrs. McCown always appeared to have money and be in easy circumstances. While this is the general nature of the evidence upon this issue we deem it unnecessary to attempt to set it out in full. Enough has been stated to show that it was clearly a question of fact for the jury. As above indicated the court in its charge submitted the issue, as to whether there were debts at the time of such sales, to the jury, and informed them that the burden was upon defendants claiming under the executor to establish same. The verdict of the jury finding for defendants for the land determined the issue in

their favor. The only assignment of error which can be construed to raise the question as to whether there was evidence from which the jury could have so found is as follows: "The trial court erred in refusing to grant appellants a new trial because the verdict of the jury and the judgment of the court entered thereon * * * are contrary to the evidence in this, that * * * if there were any debts against the estate of Alex. McCown, the evidence shows that there were ample funds in the hands of the executor, derived from the sales of cotton, slaves, stock, notes, judgments, land certificates, and other personal property, to have paid more than five times the amount of the Foster judgment, which was the only debt proved to have existed against Alex. McCown's estate, and the proof shows it was paid before said land was sold." We omit all that portion of the assignment which refers to other matters. There being ample evidence to support the verdict upon this question of fact, we would have no difficulty in overruling the assignment were it not for the following language used by the Court of Civil Appeals in their opinion herein: "In the will of Alexander McCown appointing Nancy McCown and Peter J. Willis his executors, the power to sell lands was given only for the purpose of paying the debts of the estate, and it follows that if no debts existed the power of sale did not exist. On the former appeal of the case, we think .it was properly held by the Court of Civil Appeals that the burden rested on those claiming under deeds from the executor to show the existence of debts at the time the deeds were executed. If it had appeared, as it did in regard to several of the appellees, that all of them claimed through deeds executed by the executor himself, still the evidence does not show that there were any debts due by the estate at the time the sales were made. The only evidence that tended to establish debts was the testimony of J. R. Peel, who appeared to have very confused ideas on the subject, and who finally declared that the debts of the estate at the time of the death of Mrs. Nancy McCown did not amount to two hundred dollars. The very fact that twenty thousand dollars of land was sold, an amount entirely out of all proportion to any debt even attempted to be established, was a circumstance that tended to show that the executor did not have the payment of debts in view when he sold the land." If this language of the. court was intended as a finding of fact that there were no debts we would be bound thereby, so long as they left the question to the jury on another trial, and we would not disturb their judgment of reversal if we should hold the law to be that the mere non-existence of debts would necessarily avoid sales to purchasers who in good faith received the conveyances and paid therefor without any notice that any fact existed destroying the apparent power of the executor to sell. We do not understand, however, that this is the purpose or effect of their language. We understand them to affirm the following propositions: (1) that if no debts existed Willis had no power of sale; (2) that the burden was upon defendants claiming under deeds from him to make it affirmatively appear from the evidence that

such debts existed at the time of their execution; and (3) that the evidence failed to do so in that it did not show that the judgment, which established a debt as a matter of law, had not been paid at that time. The first proposition is well settled. If the second proposition is erroneous, then the finding of fact embraced in the third does not lead to a reversal of the judgment, because if the burden was not in law upon defendants to show the existence of debts at the date of the sales they are not to be prejudiced by the fact that the evidence did not establish the non-payment of the judgment. We are therefore brought to a consideration of the correctness of the second proposition. The power of an independent executor to sell may be either express or implied. Where a will appoints executors and provides that the estate shall be administered outside of the probate court, but confers no power of sale, it may be that in order to raise the power by implication of law it is necessary under our decisions to show the existence of debts as one of the conditions necessary to the implication. We are not, however, called upon by the facts of this case to express any opinion upon this question. Blanton v. Mayes, 58 Texas, 422; Mayes v. Blanton, 67 Texas, 245; Roberts v. Connellee, 71 Texas, 11. Here the power to sell is expressly conferred by the will; and since it is not necessary to resort to implication to raise the power, it cannot be necessary for the claimant thereunder to establish by proof any of the conditions upon which the law would raise such implication. It is fair to assume that the testator knew the condition of his business and was in a position to form some idea as to what would be necessary to be done by the executors in the administration of his estate, and he having, in the will, which speaks as of the date of his death, conferred the power to sell to pay his debts, it would be against reason not to assume, at least prima facie, that there were debts to support such power. Otherwise we begin the task of construction with the assumption that he did an unnecessary and unreasonable thing in inserting the second subdivision above quoted in his will; for if the burden be upon the purchaser to show debts before he can claim under such power then that clause conferring the power becomes wholly nugatory, since it is clear that where the will appoints an executor, but makes no provision for power of sale and provides for administration outside of the probate court, and the proof shows the existence of debts, the law implies a power of sale as necessary to a carrying out of the general intent of the testator. that the administration should be independent of the orders of the court. The testator probably considered that under an express power of sale conferred by the will his executor could sell property to a better advantage than if compelled to resort to such powers as the law might raise by necessary implication. He had the right to prevent his estate being depreciated in value in the hands of his executors by placing their power of sale beyond doubt, and having done so the courts have no right to practically nullify his wise precaution by imposing upon the purchasers the burden of showing the existence of debts before they can claim under such power. So long as

it is the policy of the law making power to permit a testator to provide for the administation of his estate by his trusted friends independent of the courts, instead of allowing it to drift into the hands of merciless creditors or designing strangers through the forms of an administration in the probate court, so long should the powers expressly conferred by the will be upheld.   In this case it would have been going quite far enough to have held, as against these innocent purchasers who paid their money to the executor who was permitted by the owners of the estate to continue to exercise the power of sale conferred by the will, that the power of sale could be shown by the heirs to have terminated by the full payment of the debts before they purchased.   Cooper v. Horner, 62 Texas, 356.   The burden of proof, then, being at all events upon plaintiffs and intervenors, to show the termination of the power of sale by the payment of the debts previous to the sales of this land, the finding of the Court of Civil Appeals above referred to, that the evidence failed to show the non-payment of the judgment, when taken as true, does not show that Willis' power to sell had terminated and therefore would not justify us in reversing the case on the facts.   Since we find no error of law committed on the trial it becomes our duty to set aside the judgment of the Court of Civil Appeals and affirm the judgment of the trial court, which is accordingly ordered.

*Judgment of Court of Civil Appeals reversed.*
*Judgment of District Court affirmed.*