JONES v. GILLIAM et al. (No. 1255.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1917. Rehearing Denied Jan. 9, 1918.)

1. EXECUTORS AND ADMINISTRATORS ⚙══129(1) —ASSETS—LAND.

Title to land vests in decedent's heirs, and not in his administrator.

2. EXECUTORS AND ADMINISTRATORS ⚙══319— REAL ESTATE—SALES—POWER.

An administrator cannot sell land, except for certain purposes, and upon an order of the probate court, which must be strictly followed, since Vernon's Sayles' Ann. Civ. St. 1914, art. 3479 et seq., vests the discretionary power regarding sales in the probate court.

3. EXECUTORS AND ADMINISTRATORS ⚙══336— REAL ESTATE SALES—APPLICATION.

An administrator's application to sell real estate must show the claims against the estate and the estimated expense of administration.

4. EXECUTORS AND ADMINISTRATORS ⚙══346— REAL ESTATE SALES—ORDER.

An order authorizing an administrator to sell real estate must give the terms of such sale.

5. EXECUTORS AND ADMINISTRATORS ⚙══375— REAL ESTATE SALES—CONFIRMATION.

An order confirming an administrator's sale of real estate must direct that proper conveyance be made when the purchaser complies with the terms of the sale.

6. EXECUTORS AND ADMINISTRATORS ⚙══379— REAL ESTATE SALES—SETTING ASIDE.

A probate court, if not satisfied that an administrator's sale of real estate was fairly made, should set it aside.

7. EXECUTORS AND ADMINISTRATORS ⚙══395— REAL ESTATE SALES—CONVEYANCE.

An administrator should not convey real estate until the purchaser has complied with the terms of the sale, and if the sale be upon credit, until the purchaser has given his note for the balance due.

8. EXECUTORS AND ADMINISTRATORS ⚙══97— REAL ESTATE SALES—COMMISSIONS.

An administrator's promise to give a broker's commission for selling real estate must be authorized or approved by probate court before it is binding upon the estate.

9. EXECUTORS AND ADMINISTRATORS ⚙══109(3) —REAL ESTATE SALES—COMMISSIONS.

A probate court's refusal to allow an administrator credit for broker's commissions for negotiating real estate sales will not be reversed, except for a clear abuse of discretion.

10. EXECUTORS AND ADMINISTRATORS ⚙══109 (3)—REAL ESTATE SALES—COMMISSIONS.

A probate court did not abuse its discretion in refusing an administrator credit for broker's commissions for negotiating real estate sales, where it was conceded the prospective purchaser failed to perform his part of the contract.

11. EXECUTORS AND ADMINISTRATORS ⚙══87— POWERS—COMPROMISES.

Under the direct provisions of Rev. St. art. 3354, an administrator cannot compromise a claim for broker's commission, so as to bind the estate, without an order of probate court.

12. EXECUTORS AND ADMINISTRATORS ⚙══109 (3) — EXPENSE OF ADMINISTRATION — BROKER'S COMMISSION.

Rev. St. art. 3623, allowing reasonable expenses necessarily incurred by an administrator, is inapplicable to the payment of broker's commissions, not authorized or approved by the probate court.

Appeal from District Court, Childress County; J. A. Nabers, Judge.

Application by Will P. Jones, administrator, for final settlement and discharge, contested by Alma Gilliam and others. The county court's refusal to allow certain items was affirmed by the district court, and the administrator appeals. Affirmed.

Fires & Diggs, of Childress, for appellant. M. J. Hathaway, of Childress, for appellees.

---

⚙══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HUFF, C. J. Will P. Jones was appointed administrator of the estate of P. S. and Alma Roberts, deceased. The administration is pending in the county court of Childress county, and as part of the assets of the estate it appears that it owned some ten sections of land situated in Hutchinson county, and oral testimony shows that the county court of Childress county, some time in April, 1915, authorized the administrator to sell the land in Hutchinson county. The order authorizing such sale is not in evidence. The evidence also shows that Jones, the administrator, made an oral contract with Ramsey & Gillespie, by which he agreed to pay them a commission of 5 per cent. of the purchase price of the land if they should procure a purchaser of said land, ready, willing, and able to buy upon the terms offered, and that Ramsey & Gillespie, in connection with the Vernon Realty Company, found and procured a purchaser, in the person of Ike M. Smith, who entered into a written contract for the purchase of the land with W. P. Jones as administrator of the estate; the contract reciting that the purchase price should be $19,000, one-third cash and the balance to be evidenced by Smith's note and subject to the approval of the county court of Childress county. The contract further recites, and the evidence shows, that Smith paid $250 down as earnest money, and the administrator was to furnish an abstract of title, and as soon as the abstract could be prepared and furnished and the order of the county court of Childress county, approving the sale and ordering it consummated, the trade should be finally closed. The contract was dated the 17th day of June, 1915. It sufficiently appears that the Vernon Realty Company, at the instance of Ramsey & Gillespie, procured Smith, the proposed purchaser. It appears from the oral testimony that the sale to Smith was reported by the administrator to the probate court, which approved and confirmed the sale, directing the execution of the deed upon the compliance with the contract by Smith. The order of that court, however, is not in evidence. Before the abstract could be completed and examined the evidence shows that Ike M. Smith died, and that his son, Ed. Smith, qualified as his executor. After the administrator received notice of the death of Smith he learned through one Mr. Owensby that a Mr. W. T. Coble would purchase the land. Owensby either wrote or wired the administrator, asking him if he (Owensby) would find a buyer for the land if there would be a commission to him. The administrator says he told him there was a commission in it, but that he would have to square it with other parties—the parties who procured the other buyer, Smith. He testifies:

That he went over the ground with Owensby and finally agreed on a settlement with him. "We agreed that he (Owensby) have a commission. I asked Ramsey if they would allow Owensby $200 on their commission, or if they would be willing to take $750 and allow him $200 and he took up the matter with the other party, and told me he would do so—with the Vernon Realty Company. I then went to Amarillo and went over the situation with Owensby. I was to pay him, and agreed to pay him $200 or agreed with Ramsey & Gillespie to pay him $200, and the other parties $750 in all."

He afterwards stated that he induced Owensby to take $100, and that he only paid in all $850, and the total commission would have been $950. After Smith's death the administrator filed in the probate court his report of the sale to Coble, reciting in that report that the court had theretofore, in July, 1915, confirmed the sale to Ike Smith, setting up the terms of the sale to Ike Smith, further reciting:

"Your administrator would show to the court that the said Ike M. Smith has never complied with the terms and conditions of said sale, but, on the contrary, failed and refused to carry out and perform the conditions and terms of said sale, and has failed to pay the cash payment for said lands, or to execute the notes for deferred payments, as set out in said report; the said Ike M. Smith has since died, and that the heirs and executors of the estate of the will of said Ike M. Smith have also failed and refused to comply with the terms of said sale, and to make the cash payment for said land, and to execute the notes for the deferred payments as set out in said report of sale."

He then sets out that he had sold the land to Coble for the same price, the terms being different, in that Coble was to pay two-thirds cash and one-third on time. The order confirming the sale to Coble is not in the record, but it is treated by the parties as having been consummated by the administrator. It also appears that the executor of Ike Smith executed on the 5th day of February, 1916, a quitclaim deed, or release of Will P. Jones, the administrator, reciting therein that Ike M. Smith did not, during his lifetime, comply with the terms of the agreement, but failed to do so, and that he died thereafter in September, 1915, without in any manner complying with the terms of the agreement, and that his executor, likewise, since the death of Smith, and after his appointment as executor, failed and declined to carry out and comply with the contract. The administrator filed his annual statement of his account with the estate, in which he charged the estate with the two items, $375 each, one to Ramsey & Gillespie, and the other to the Vernon Realty Company, and thereafter also filed his application for final settlement and discharge. The heirs of P. S. Jones and Alma Roberts filed a contest of several of the items in the county probate court, among which was the commission theretofore charged against the estate. The county court refused to allow these two items, and Jones appealed to the district court from that judgment, and upon hearing on appeal to the district court the same result was had, and from the judgment of the district court this appeal is prosecuted.

It was admitted in the trial court and in

this court that it was agreed that the only items in controversy before this court are the items, one dated 3/1/16, amounting to $375, paid to Ramsey & Gillespie, and another paid to the Vernon Realty Company, for the same amount, aggregating in all $750, and 5 per cent. on this sum of $750.

[1, 2] The assignments and propositions in this case present the question whether a land agent, who has found a purchaser, ready and willing to enter into a contract with the administrator of an estate of a deceased person, and who does enter into a written agreement with the administrator, is entitled to recover the commission agreed upon between the administrator and the agent. The agreement so made depends upon the power of the administrator to so contract. It is elementary that the title to the land belonging to a decedent does not vest in the administrator, but in his heirs. The land cannot be sold by the administrator except for certain specified purposes and upon an order duly made by the probate court. The administrator is not vested with the discretion with reference to such sales, but it rests with the probate court. In other words, the administrator is an officer of the court, and only the executive arm of the court with reference to sale of lands. Such representative therefore acts under the direction and under the control of the court. The power is in the court to fix the terms of the sale. It is therefore the duty of the administrator to strictly conform to the terms or requirements of the order. Ruling Case Law, vol. 11, Executors and Administrators, § 389 et seq. Our statutes with reference to the administration of the estates of decedents are evidently founded upon the principles of common law, and nowhere vest in the administrator the title or discretion with reference to the sale of real estate. This will be perceived by an examination of chapters 22 and 23, Estates of Decedents, vol. 2, Vernon's Sayles' Civil Statutes, art. 3479 et seq.

[3-8] An application for the sale of real estate must show fully and particularly the charges and claims against the estate, "and the estimated expenses of administration." The order granting the application must give the terms of such sale, and in the report of sales the items which must be reported are specified. The court must, upon the report, inquire into the manner in which the sale was made, and the order of confirmation must direct the proper conveyance to be made by the administrator when the purchaser complies with the terms of sale; and if the court is not satisfied that the sale was fairly made and in conformity with law, he shall set it aside by order duly entered. No conveyance shall be executed or delivered to the purchaser until the terms of the sale have been complied with by the purchaser; when such sales are made upon credit, it is made the duty of the administrator, before delivering the conveyance of the property, to take from the purchaser his note, etc. When the real estate brokers in this case undertook to find a purchaser for the land, they must have done so with the understanding that the sale could not be consummated, except upon compliance with the statutes and orders of the court. In order to bind estates, such contract for commission must have been authorized by the court or approved by the court. It occurs to us the only remedy the brokers had, in the absence of such order or approval by the court, would be against the administrator personally. The order authorizing a sale to Smith or its confirmation is not in the record, and in so far as this record shows the court only authorized the administrator to make the sale. He was not authorized to employ another agent or to delegate his authority to others. The law fixes his commission and compensation for his services. In the report of sale of the land to Coble the administrator expressly states that Ike Smith, and his representatives after his death, refused to comply with the terms of the sale as required by the order and statutes, and thereby procured the order confirming the sale to Smith vacated. Until the purchaser had complied with the terms of sale under the law, there could be no sale, and the estate could not be charged with services which were of no benefit to the estate and which were not authorized or approved by the court or authorized by law. In finding and procuring Smith, the brokers must have done so with the understanding that the powers of the administrator were limited and subject at all times to the control of the court. To that extent we think the general rule with reference to the rights of a broker to commission upon producing a purchaser is modified. It may be the administrator would be personally liable to the brokers, but it is not our view that they could force the court to charge up against the estate the value of such services rendered under their brokerage contract. If, therefore, the administrator paid the brokers for such services, he must have done so out of his own funds, and should not be permitted to retain it out of funds belonging to the heirs of the estate. It apparently is the contention, even though the sale was not consummated, yet the brokers, in the interest of the estate, had been employed by the administrator, who performed all of their undertaking in producing a purchaser ready, able, etc., and therefore the administrator, acting as a prudent man would have done in his own affairs, should be allowed to charge for the services so rendered. It is insisted that the uncontroverted evidence shows the services were reasonable and necessary. The administrator was given authority to make the sale, and was not given the authority to delegate his power, but he undertook to perform his duties under the control of the court.

He asked the court to vacate the sale made by his brokers because the purchaser would not comply with the contract or the law. The undertaking of the broker to find a purchaser who would comply with the contract and the law was not produced according to his own sworn report and application. They had not, therefore, complied with their undertaking, but it is insisted that specific performance could have been enforced.

[9, 10] We do not understand from the statutes that the court, whose duty it was to determine such matters, was forced by law, or the contract, to enforce the sale. He was the sole arbiter as to the best interest of the estate; in him alone was the power to determine its best interest, and we think a clear abuse in refusing such commissions must be shown in order to permit the broker or administrator to recover for such services so rendered. Ennis v. Cator, 174 S. W. 947. In this case there was no sale to Smith for the reason that he died before its consummation and according to the recitation in the application filed by the administrator to sell to Coble because Smith and his representatives refused to comply. On the sale to Coble it appears one Owensby first notified the administrator that he could find a purchaser if there was any commission to him in it. Jones informed him there was. The sale to Coble was consummated, and upon its consummation Jones testified that Owensby, the broker firm in the Smith deal, and the administrator, agreed that the commission of 5 per cent. on the Coble deal should be divided, $200 to Owensby, $375 each to the respective brokers in the Smith deal. There is no order of court showing that the administrator was authorized to employ Owensby and pay him 5 per cent. commission on the sale, or that any such charge was ever approved by the court. In fact, there is no evidence that there was an agreement by the administrator to pay Owensby that amount. Owensby was willing and did take $100 for his services. There can be no ground upon which the two brokers were paid $375 each, except that it was in satisfaction or compromise of their claim against the administrator or estate in the Smith trade.

[11] In so far as the estate's liability or interest was concerned, the administrator had no authority to compromise so as to create a liability against the estate. The administrator may compromise any claim in dispute only upon application to a regular term of court, and this will be permitted only when the court is satisfied it is to the best interest of the estate, and an order must be entered to that effect. Article 3354, R. C. S. In this case the administrator received his full 5 per cent. commission for receiving the money paid in consideration of the land by Coble. In addition he paid $100 to Owensby, and then paid the two other broker firms $750, and also charged the estate 5 per cent.

on the $750 so paid to the brokers. These several items are charged up as expenses necessary and proper in managing the estate. The probate court evidently disallowed this claim, as did the trial court below, on the ground that it was not necessary in the handling of the estate or to its best interests. The original broker had no such contract as could have been enforced by them. The estate got no benefit from their services under their contract. Owensby had no such contract as could be enforced against the estate; his services may have benefited the estate, but he was satisfied with $100 for his services. This the court allowed, as expenses incurred by the administrator. But his commission with the two broker firms was not allowed. We do not believe that he had the power to adjust or settle the claim against the estate. That, under the law, rested with the court. In the case of Rice v. Conwill, 35 Tex. Civ. App. 341, 80 S. W. 393, the court had under consideration the statutes, which impose the duty on the administrator to take such care of the property of the estate as a prudent man would take of his own, and to keep in repair buildings, etc. It was there held that improvements made on the premises did not fall under the term "repair." There was also an item of $50 charged for assisting the agent of the administrator in selling land. The court said in the absence of an order of court the administrator had no power to contract in person therefor, much less through the medium of an agent. In that case the judgment of the lower court was reversed and rendered. While the $50 item for the sale of land is only mentioned incidently, it is evident the court refused to allow a recovery against the estate therefor. Appellant relies upon Gibson v. Gray, 17 Tex. Civ. App. 646, 43 S. W. 925. An examination of that case shows that it was based upon the theory that an assignee of a bankrupt estate under the statute is a trustee, in whom the title is vested and who is personally responsible in a contract of agency, citing Taylor v. Mayo, 110 U. S. 330, 4 Sup. Ct. 147, 28 L. Ed. 163, in which case it is said a trustee is not an agent. When a trustee contracts as such, unless he is bound no one is bound. It was therefore held a broker who sold under a contract of employment with such trustee could recover against the trust estate. In that case the court also distinguishes the contract of a trustee and a receiver. The custody of property by a receiver is that of the court, and his acts, so far as authorized, are the acts of the court, and of course he incurs no personal obligation while acting within the scope of his authority. So in the case of an administrator, he is the officer of the court; no title vests in him, but all the powers with reference to the sale of land is in the court. The other cases cited by appellant are cases where an independent executor, under a will, which gives him power to sell, may contract

for commissions. Armstrong v. O'Brien, 83 Tex. 635, 19 S. W. 268; O'Brien v. Gilleland, 79 Tex. 602, 15 S. W. 681; Dyer v. Winston, 33 Tex. Civ. App. 412, 77 S. W. 227; McCown v. Terrell, 9 Tex. Civ. App. 66, 29 S. W. 484. These cases evidently rest upon the doctrine of trust; the title or power being vested in the executor as trustee under a will empowering the trustee to sell. Article 3374, R. C. S; Terrell v. McCown, 91 Tex. 231, 43 S. W. 2. The appellant also cites cases with reference to the employment of attorneys. This power is especially conferred by statute.

[12] It does not occur to us that money paid a broker on a contract for 5 per cent. commission to effect a sale properly falls under article 3623, allowing all reasonable expenses necessarily incurred by the administrator in the preservation, safe-keeping, and management of the estate and all reasonable attorney's fees necessarily incurred in the course of administration. The appellant contests the finding or the idea that the amounts claimed were for commission for sale, but asserts that they were for services rendered in the management of the estate. The administrator testified the compensation agreed upon was 5 per cent. commission on the amount of the sale. They were employed as brokers and sold the land and contracted as such. By such contract the brokers undertook to sell the land and to perform a duty imposed by the statutes upon the administrator. This duty or power could not be delegated by the administrator to another and certainly not without an order authorizing him to do so, or approved by the court. The law fixed the compensation of the administrator at 5 per cent. on the money received on the consideration paid for the land, and to permit another 5 per cent. for the services included in the power to sell would amount to a double charge for the same services. We believe the court correctly refused to allow these items.

The judgment will be affirmed.