MARY D. MOORE HOLIFIELD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10089.    Promulgated September 7, 1927.

A minor has the right to deduct from her gross income amounts used by her guardian to reimburse a third person who had paid claims of a former guardian, and an administratrix who, under the law of Texas, had the management of her estate.

*Gillis A. Johnson*, *Esq.*, and *Warren Scarborough*, *Esq.*, for the petitioner.

*George G. Witter*, *Esq.*, for the respondent.

This proceeding involves a deficiency in income tax for the year 1920 in the amount of $1,989.52. This deficiency arises from the refusal of respondent to permit the deduction from the gross income of petitioner for the year 1920, of certain amounts paid to an administratrix of the estate of the mother of petitioner and to her former guardian.

### FINDINGS OF FACT.

Willie Mae Jackson died intestate April 26, 1916, leaving surviving her, as her only heirs, two daughters by a former marriage, Ella Louise Moore and Mary Davis Moore, then minors. On July 2, 1916, Mrs. S. M. Drew was appointed administratrix of the decedent's estate. On July 22, 1919, by an order of the county court having jurisdiction of the matter, the time for closing the administration was extended to July 2, 1920, and it was ordered that Mrs. Drew continue as administratrix until that date.

In July, 1916, Vincent Jarvis was appointed guardian of the persons of the two infants and he then applied for the guardianship of their estates. This right was granted and thereafter contested. This contest was appealed to the district court which confirmed the appointment but did not make proper entry of its order. In this state of affairs, Jarvis, as guardian of the estate of the infants, made application to the county court to withdraw the estate from administration. This proceeding was appealed, first to the district court, then to the Court of Civil Appeals of Texas, and finally reached the Supreme Court of Texas on questions certified to the latter court. See *Drew* v. *Jarvis*, 110 Tex. 136; 216 S. W. 618. The final result was that the Supreme Court, on November 19, 1919, held that on the record as it then stood, Jarvis should not prevail, but pointed out the steps he could take in the lower court which would give him the right to prosecute his action.

Ella Louise Moore, in October, 1919, married W. B. West, Jr. Soon after his marriage, West began to investigate his wife's affairs and became convinced that not only were large amounts being paid out in litigation which had for its purpose only the question of which person was to manage the estate, but that the estate was being mismanaged by the administratrix. He at once requested the resignation of both the administratrix and the guardian. The administratrix refused, pointing out that her appointment ran until the next July, and that she had incurred certain extraordinary expenses, including fees due to her attorneys, which should be settled. Jarvis demanded and threatened suit to recover amounts including fees due to his attorneys which he claimed were owing him as guardian. His claim as a whole was not conceded. These matters were both com-

promised and West and his wife agreed to pay the administratrix and her attorneys $14,623.33 in settlement of their claims and in consideration of her immediate resignation. This settlement was made in December, 1919. West and his wife paid the full amount to the administratrix and to her attorneys. Of this amount they borrowed $12,500, from banks on their joint note. This note was paid in March, 1920. The guardian agreed to accept in full settlement of his claims, including amounts due his attorneys, the sum of $5,457.13, and to resign as guardian of petitioner. Jarvis then resigned.

In the latter part of 1919, Ella Moore West qualified as temporary guardian of the estate and person of petitioner. On December 23, 1919, the county court entered an order directing the administratrix to turn over all the property of the estate of every kind to Ella Moore West, for herself and as guardian of petitioner. During 1920, Ella Moore West and her husband were paid out of the income of the estate, the moneys they advanced to the administratrix, and during the same year Ella Moore West individually and as guardian paid, out of her share of the estate and out of petitioner's share thereof, to Jarvis, $5,457.13. These disbursements were reported to the county court by Ella Moore West, who in the meantime had been appointed permanent guardian, in her first annual account. This account was duly approved by order of said court.

The estate of Willie Mae Jackson consisted of real estate in Fort Worth, Tex. This real estate was rental property. The receipts and disbursements of the estate, from July 1, 1916, to and including the calendar year 1921, were:

| Period | Receipts | Disbursements |
|---|---|---|
| July 1 to December 31, 1916 | $36,821.88 | $24,660.81 |
| Exceptional items which were not income or expense, included in totals | 10,000.00 | 1,000.00 |
| | 26,821.88 | 23,660.81 |
| Calendar year 1917 | 59,000.13 | 73,607.60 |
| Exceptional items included in totals, which were not income or expense | 2,036.70 | 12,000.00 |
| | 56,963.43 | 61,607.60 |
| Calendar year 1918 | 67,075.23 | 64,599.21 |
| Exceptional items included in totals, which were not income or expense | 6,187.67 | 12,111.40 |
| | 60,887.56 | 52,487.81 |
| Calendar year 1919 | 162,932.70 | 139,283.78 |
| Exceptional items included in totals, which were not income or expense | 93,306.35 | 28,900.00 |
| | 69,626.35 | 110,383.78 |

During the administration of W. B. West, Jr., and wife, receipts and disbursements were as follows:

| Period | Receipts | Disbursements |
|---|---|---|
| Calendar year 1920 | $140,203.43 | $120,348.78 |
| Exceptional items included in totals, which were not income or expense | 40,466.17 | 83,311.84 |
|  | 99,737.26 | 37,036.94 |
| Calendar year 1921 | 97,946.03 | 58,410.23 |
| Exceptional itmes included in totals, which were not income or expense | None. | 3,542.91 |
|  | 97,946.03 | 54,867.32 |

Petitioner married Holifield in August, 1921.

### OPINION.

MILLIKEN: The payments to the administratrix and to the former guardian appear to have been eminently justifiable from a business standpoint. They relieved the estate of unnecessary litigation which involved only the question of conflict of management, and brought it under the control of petitioner's guardian, who was her sister, and of the sister in her individual capacity. The wisdom of these expenditures is further shown by the increase in the net income of the estate after the change in management. If there remains any further doubt, it is removed by the action of the county court in approving the action of the new guardian in deducting one-half of the expenditures from the income of petitioner.

The estate consisted of realty. While the administratrix had during administration the control of the realty and the right to lease it (arts. 3312, 3314, 3545, Vernon's Ann. Tex. Civ. Stats., vol. 9), the title thereto vested in petitioner and her sister from the date of their mother's death. See *Jones* v. *Gilliam* (Texas Court of Civil Appeals), 199 S. W. 694.

While the guardian would have had the same rights as to the realty as the administratrix (Arts. 4164–4166, 4176, Vernon's Ann. Tex. Civ. Stats., vol. 13) if he had prevailed in his action against the administratrix, the title to the estate would have vested in the petitioner and her sister and the income therefrom was their individual income.

With both the legal and beneficial title of her share in petitioner, it follows that the gross income therefrom was her individual income and further, that she is entitled to the same deductions as any individual taxpayer. Like any other person engaged in the business of renting property, she is entitled to deduct a loss incurred in getting rid of an incompetent manager. The payments to the

administratrix and to the former guardian were essentially ordinary business expenditures.

The remaining question is, in what year these expenditures are deductible. The settlement between the administratrix and West and wife was made in December, 1919, and it is probable that the payment was made at that time. The money paid was that of West and wife and not that of petitioner. She was not a party to the agreement. She was then a minor. She was not brought into the matter until one-half of the payment was deducted from her share of the income. This occurred in 1920, the year in question. The situation would not have been different from a legal standpoint if the administratrix had continued in charge and had withdrawn in 1920 the same amount to pay her commissions and attorneys' fees. By virtue of the order of the county court, the administration of the estate would have ceased on July 2, 1920, so that the deduction was made from the income of petitioner in the same year in which the administration would have ceased by virtue of the order of the. county court. We hold that $7,311.66, which is one-half of the amount paid the administratrix, is deductible from petitioner's gross income for 1920.

It does not appear that the amount paid Jarvis was in compromise of his future rights, but was in settlement of what he claimed were then existing liabilities. The marriage of Ella in 1919, terminated the guardianship as to her (art. 4128, Vernon's Ann. Tex. Civ. Stats., vol. 13). For this reason, the payment to Jarvis can not be attributed as to this portion of the estate, as in compromise of any of his future rights. From all that appears in the record, it would seem that petitioner had, in 1920, the right to choose her guardian (art. 4126, Vernon's Ann. Tex. Civ. Stats., vol. 13). But, however this may be, there is nothing in the record which indicates that the amount paid Jarvis had anything to do with his resignation, except that he would not resign until he had been paid or his rights had been acknowledged. If he had been successful in his action against the administratrix to secure possession of the estate and had deducted from the income the amount of his claim, there is no doubt petitioner would be entitled to take such payment as a deduction in the year in which it was deducted from her income. The fact that this amount was deducted from her income by her second guardian, does not alter the case. She should be permitted to deduct $2,728.56, which is one-half of the $5,457.13 paid to her former guardian.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*